THE TEXAS & PACIFIC RAILWAY COMPANY v. M. M. LESTER.

No. 2791.

1.  **Physical Sufferings.**—While in a suit by the mother, a widow with no children, against a railway company for negligently causing the death of her son, his physical sufferings preceding the death can form no basis for damages, yet where the testimony showed that the body of deceased had been mangled and that he died a few hours after the injury, it is no ground for reversal that a witness, over objection, was allowed to testify that the deceased "moaned until he died."

2.  **Res Gestæ— Declarations of Servants.**— It was competent to show that about half an hour before an accident upon a railroad caused by the spreading of the rails upon the track, a track walker reported to the section boss at work upon the track the condition of the track, that "the track is spread." The report was by a servant whose duty it was to ascertain the condition of the track, and to report it to other servants whose duty it was to repair it.

3.  **Contributory Negligence.**—See facts and charge approved upon contributory negligence; also charge refused as not applicable to the testimony.

4.  **Life Expectancies.**—Courts can not hold juries bound by statistics or calculations of life expectancies in estimating damages to a mother for loss of her son's support during her life.

5.  **Verdict—Damages.**—Suit by a widow for death of her only child, a son 26 years old, earning $1000 a year, out of which he contributed $200 a year to his mother's support, who was fifty-one years old. He was "industrious, economical, and temperate." *Held*, a verdict for $4200 was not ground for reversal.

ERROR from Tarrant.   Tried below before Hon. R. E. Beckham. The opinion states the case.

*Finch & Thompson*, for plaintiff in error. — 1. The court erred in the admission of the testimony of Chas. D. Norwood to the physical sufferings of deceased, because this is a suit by the mother to recover the loss to her of the killing of her son, and testimony relative to his physical suffering resulting from his injuries was irrelevant and calculated to prejudice the jury. Railway v. Cowser, 57 Texas, 293; March v. Walker, 48 Texas, 375; Railway v. Roy, 1 Am. and Eng. Ry. Cases, 225; 2 Thomp. on Neg., 1289; 2 Wood Ry. Law, p. 1245.

2.   The declaration of witness Cable sought to be proved was not made at a time and under circumstances as to be admissible as part of the *res gestæ*. [See opinion.]   The testimony offered and objected to was to show the bad condition of the track by the declaration of a third party, and was inadmissible, being hearsay testimony.   Railway v. Crowder, 70 Texas, 222; Railway v. Moore, 69 Texas, 157; Railway v. Fray, 29 Am. and Eng. Ry. Cases, 309; Railway v. Ivey, 71 Texas, 409; Railway v. Markis, 71 Texas, 491; City of Austin v. Ritz, 72 Texas, 391; Batton v. Waller, 58 Am. Dec., 504; 2 Redf. on Rys., 319, note c; Insurance Co. v. Mosely, 8 Wall., 409.

3.   The court erred in refusing defendant's special charge, that if the deceased had had his attention called to the condition of the track, and

that if he had been notified not to exceed a certain rate at place of accident, and that he did violate said orders and run at increased speed that directly contributed to his injuries, the defendant would not be liable. Railway v. Underwood, 64 Texas, 463; Railway v. Scott, 64 Texas, 549; Whitsett v. Miller, 1 Posey's U. C., 205.

4. The verdict and judgment are contrary to the law and the evidence, in that the latter shows that the accident occurred by reason of the negligence of the deceased in running at an excessive rate of speed over a track the condition of which was to him known, and against the order of defendant. Railway v. Weisen, 65 Texas, 443; Railway v. Hamilin, 66 Texas, 92; 2 Thomp. on Neg., sec. 23, 24.

*D. W. Humphreys*, for defendant in error.—1. The evidence of the witness Norwood was proper and competent testimony to show the death of plaintiff's son, and was used for no other purpose, and had no effect on the amount of verdict. Rodgers v. Crane, 30 Texas, 284; Railway v. Collier, 62 Texas, 318; 1 Greenl. on Ev., sec. 108.

2. The testimony of witness Cable was competent to show that the defendant's proper agent, the section boss, had notice of the defective track, and this could be shown by any witness who was present and heard the notice given. Deer. on Neg., sec. 200; Speed v. Railway, 71 Mo., 303; 38 Wis., 289.

3. In regard to the condition of the track two things had to be shown by the plaintiff before a recovery could be had:

(1) That the track was in bad condition at the place of the accident, as alleged in the petition.

(2) That the defendant knew, or could have known, of said defective condition, and the testimony of Cable was competent to show such knowledge of defendant, by showing that he was present and heard notice given to defendant's section boss, who was charged with this special duty of repairing. Pierce on Rys., p. 382.

4. As to whether or not there was negligence of the deceased, which contributed to the injury, was a question of fact for the jury. Rule 35, Sup. Ct.; Railway v. Randall, 50 Texas, 254; Railway v. O'Donnell, 58 Texas, 27; 9 Texas, 60; 8 Texas, 439; Id., 460; 41 Texas, 391; 5 Texas, 93; 60 Texas, 260.

5. The verdict of the jury is not contrary to the law and the evidence, and the jury are warranted by the law and the evidence in concluding that the deceased, in running at said rate of speed, did not contribute to the accident, and that said rate of speed was not the proximate cause of the accident. Rule 35, Sup. Ct.; Railway v. Murphy, 46 Texas, 356; Railway v. Randall, 50 Texas, 254; Railway v. O'Donnell, 58 Texas, 27; Pierce on Rys.. 378; Ford v. Railway, 110 Mass., 240.

6. If the accident was the result of the combined negligence of the

defendant and other servants of the defendant, it would not prevent a recovery on the part of the plaintiff. Rev. Stats., art. 4234; Pierce on Rys., p. 379, Cool. on Torts, p. 560; 2 Thomp. on Neg., p. 981.

7. The verdict of the jury was not as large as authorized by law in such cases. Railway v. Kindred, 57 Texas, 491; Railway v. Lee, 70 Texas, 503.

HENRY, Associate Justice.—This suit was brought by appellee to recover damages for the death of her son, who, while acting as a locomotive engineer for defendant, was killed by being crushed under some of the cars of the train that he was on.

The petition charges and the evidence establishes that the road bed at the point where the injury occurred was worn and weak, and that the track was out of line and so spread that the engine and cars rolled off of it and on to the son of plaintiff.

The case was tried with a jury, who rendered a verdict for plaintiff for forty-two hundred dollars.

After the engineer was injured he was taken to a hospital, and on the trial the fireman of the same train, being a witness for plaintiff and giving an account of the occurrence, among other things testified, over the objection of defendant, that " while we (Lester, the engineer, and himself) were at the hospital there was only a partition between us, and I could hear Lester moaning until he died."

The ruling of the court in permitting this statement to go to the jury is assigned as error upon the ground that plaintiff can only recover in this action the pecuniary loss occasioned to her by the death of her son, and that his physical suffering was not an issue. This proposition is undoubtedly correct as to what was the issue being tried. The court distinctly instructed the jury that such was the issue, and we can not think that the mere statement that the deceased "moaned until he died" could have at all influenced the jury. Other evidence that his body was mangled and that he died in a few hours after that occurred was as fully suggestive of his suffering pain as evidence that he groaned could be.

A witness for plaintiff, over the objection of defendant, testified that about one o'clock p. m. on the day of the accident—which was about half after one o'clock p. m.—while witness was present when the section men were at work on the section where the accident occurred, the track walker came up, and the section boss, or some of his men, asked him how things were down below. He said, " All right, except the track is spread over beyond Rush. You had better look after it." The reply had reference to the place where the accident occurred.

The admission of this evidence is assigned as error, and it is contended it was inadmissible because it was the declaration of a third party, and hearsay.

The evidence clearly indicates that the statement was made by a servant of defendant, whose duty it was to ascertain the condition of the track and report it to other servants whose duty it was to repair it. The statement was part of the *res gestæ* and admissible.

· Defendant pleaded that the engineer's own negligence in running the train at a greater rate of speed than was allowed by the regulations of the company caused or contributed to his own injury.

It was a freight train, and the evidence shows that according to the rules in force at the time such trains were required not to exceed a rate of speed of fifteen miles per hour, and that an order had been issued and posted on bulletin boards at five places on the railroad, reducing the rate of speed on all freight trains west of Arlington to ten or twelve miles per hour. These bulletins were intended for the information of conductors and engineers, and it was their duty to examine them to see what orders had been posted.

The accident occurred west of Arlington. It is not shown when or how long such notices were posted, nor that Lester, the deceased, ever saw or heard of them, or that he was on the road while they were posted.

The circumstances under which the wreck occurred are detailed by the fireman as follows:

"We were running down said hill, engine shut off, and drawn along by the weight of the train, at a speed of twenty-five or thirty miles per hour. Lester was working with his pump. I had been oiling the valves, and when we reached the point aforesaid I looked ahead and saw the track out of line for some thirty feet—it being perhaps two feet at the widest point. I at once said to Lester, 'Get off, Billy, the engine can't go over that track.' He at once reversed his engine, stepped to the left side to get off, and then went back to his place on the right side and jumped off, falling on his face. The third car jumped the track and fell on him.

"On that day we had come from Longview, and were several hours late leaving Dallas, and when we left Arlington were running about twelve or fifteen miles per hour; as we turned down Arlington hill Lester shut off steam; the train hands being all in the caboose caused the train to force the engine down faster, as no one was on top to apply the brakes.

"The hill was about three miles long, with a grade of about thirty-three feet to the mile. We did not see the defective track in time to avoid the accident, as it was on a curve. Lester being on the inside and working with his pump did not see it, and I being on the outside could not see it in time to avoid the accident.

"We were about 150 or 200 yards from the defective track when it was first discovered. The reason Lester was not looking ahead was that he had his head turned towards the floor to fix the lazy lock, which was out of order. It regulates the feed of the pump from the tank to the

engine, and, to work on the pump, he had to turn square around, with his face to the floor, and in that position he could not see ahead. Our schedule time was about fifteen miles per hour, but it was customary to run faster when train was behind time.

"The reason we did not stop was because we were too close to the defective place and no brakeman on top to apply the brakes.

"The train could not have been stopped if we had been running twelve miles per hour. The engine we had was an eight wheel Baldwin, and the brakes used on the train were the standard freight car brakes. After the speed of the train got to be over fifteen miles per hour Lester called for brakes; this was immediately before the accident occurred. After defect in track was discovered he called for brakes again, reversed engine, and jumped off. He called for brakes twice; once at the top of the hill and again just before the accident occurred."

A number of locomotive engineers testified as to the distance within which such an engine; moving at rate of speed from twelve to fifteen miles per hour, on such grade, could be stopped. The shortest distance stated by any of them was a quarter of a mile, the longest was three-quarters.

The court instructed the jury, "that when a person enters the service of a railroad company he thereby assumes all the risks ordinarily incident to his employment, and that he can not recover for any injury resulting from his own want of care; and if you believe from the evidence that said W. H. Lester, at the time of the alleged injury, was himself guilty of negligence, or want of care in the manner of operating his engine, which contributed to his injury, and that by the use of ordinary care on his part the injury would not have occurred, you should find for the defendant; though you may believe that the road bed at the place of the accident was in an unsafe condition, and though you may believe that said W. H. Lester was guilty of negligence in operating said train, yet unless you believe that his negligence (if any) contributed to the injury, and that the same could not have been avoided by the exercise of ordinary care on his part, or by those engaged with him in operating said train, then such negligence on his part would not exempt the defendant from liability if guilty of the negligence which caused the injury."

Appellant complains of the refusal of the court to give the following charge at its request:

"You are further instructed that if you should believe from the evidence that the condition of the defendant's track had been called to the attention of plaintiff's deceased son, either by virtue of its schedule, bulletin board, or otherwise, and that he had been ordered not to run at a rate of speed in excess of twelve miles per hour at place of accident, and that in violation of his instructions and notice aforesaid, if any, he did at said place run at a rate of speed of twenty-five or thirty miles per

hour, and by running at such rate of increased speed he contributed directly to the accident which caused his death, then you will find for defendant."

We think this charge was correctly refused, both because the charge already given was as favorable to the defendant as it had the right to demand, and because the charge requested left out of view the precautions taken by deceased to regulate the speed of the train.

We know of no authority for reducing to a mathematical certainty the amount of damages that a jury may find in such cases as this. At the same time the amount found must be based, as far as can be, on facts proved, and is not within the uncontrolled discretion of the jury.

The language of the statute is: "The jury may give such damages as they may think proportioned to the injury resulting from such death." Giving proper weight to the facts surrounding the parties at the time of the death, the jury may properly have referred to their own experience, observation, and judgment as to what the future contained for them.

However useful such evidence may be, courts can not hold juries bound by statistics or calculations of life expectancies. In this case the jury had the facts: That the son was industrious, economical, and temperate, and that at the age of twenty-six years he was earning one thousand dollars a year, out of which he was furnishing towards his mother's support, who was then fifty-one years of age, two hundred dollars per annum. If they concluded that her advancing years would create a greater necessity, and that the son's disposition and increasing ability would probably lead him to meet the demand, we are not convinced that an interference by us with the result of that opinion would come any nearer to enforcing the purpose of the law.

The judgment is affirmed.

*Affirmed.*

Delivered November 8, 1889.