### HOUSTON & TEXAS CENTRAL RAILWAY COMPANY V. JAMES WHITE ET AL.

#### Decided March 14, 1900.

**1.  Railway Company—Negligence of Foreman—Injury to Employe.**

In an action against a railway company for negligence causing the death of an employe it was shown that the deceased, while working in a switch crew, was injured by reason of the foreman signaling the train to start without giving notice, and while deceased was between a derailed car and a platform, thus causing him to be caught and injured, and that in the attempt to release him the foreman negligently caused the train to be backed, thus inflicting other injuries causing his death. Held sufficient to authorize judgment against the defendant.

**2.  Action for Death of Son—Measure of Damages to Parents.**

In an action by parents for negligence causing the death of their son, it is proper to instruct the jury that they may find for each of the plaintiffs such damages as they think proportionate to the pecuniary loss resulting to plaintiff from their son's death, and that in estimating the damages they should consider the respective ages of the parents, what the deceased earned, what proportion of his wages he contributed, and would have contributed, to the support of his parents, and for what period of time.

**3.  Same—Charge of Court—Elements of Damages.**

In such action a charge of the court from which the jury might have understood that the circumstances which were the basis for estimating the damages, were the elements thereof, was not prejudicial error where another clause instructed them to consider nothing as an element of damages except the pecuniary interest which the plaintiffs had in the son's life.

**4.  Same—Evidence—Statement by Son.**

In such an action evidence of a statement made by the son to his mother, that he would support and take care of her the balance of her life, was not hearsay, and was admissible to show that the mother had good reason to expect pecuniary aid from him.

**5.  Same—Pecuniary Condition of Parents.**

In an action of damages by parents for negligently causing the death of their son, the pecuniary condition of plaintiff may be shown in evidence.

**6.  Same—Expert Witness—Duties of Foreman.**

A witness who shows that he is familiar with the duties of foremen and switchmen in the yards where deceased was negligently killed while at work in a switch crew, is competent to testify as to the duties of the foreman under the circumstances resulting in such death.

**7.  Same—Error in Admitting Evidence Waived.**

Where in such action, plaintiff offered in evidence a petition for divorce filed by the deceased son against his wife, for the purpose of showing that the wife had no interest in the recovery, and it was afterwards agreed by counsel for both parties that she had no interest therein, and plaintiff's counsel offered to withdraw the petition and have the jury instructed that it was not to be considered, but defendant's counsel stated, in effect, that it made no difference, defendant will not be heard to complain on appeal of the introduction of the petition.

**8. Evidence—Impeachment of Witness.**

The credibility of a witness can not be impeached by evidence showing that he would not work, and was a common street loafer and bum, generally associating with disreputable characters.

**9. Same—Evidence Confined to General Reputation.**

Evidence impeaching the veracity of a witness must be confined to his general reputation, and it is not permissible for the impeaching witness to state the names and numbers of people he has heard say they would not believe the impeached witness under oath, and the facts and circumstances upon which he bases his opinion that the one so impeached is unworthy of belief.

**10. Same—Remarks of Counsel.**

Where counsel is indulging in improper remarks as to the character of witnesses, it is not error for the court to require him to desist from remarks of that nature.

**11. Charge of Court.**

A special charge is properly refused where it is already substantially given in charges asked by the same party.

**12. Same—Charge Excluding One Cause of the Injury.**

Where the evidence showed that an employe had been, by the improper starting of a switching train, caught between the cars and the platform and injured, and also that he received additional injuries caused by the foreman's negligence in backing the train before he was relieved, and that the former injury might not have caused his death, a charge was properly refused which instructed that the verdict should be for the defendant if the foreman was not negligent in starting the train, since this eliminated the issue as to the foreman's negligence in causing the latter injury by wrongfully backing the train.

**13. Master and Servant—Foreman—Concurring Negligence of Fellow Servant.**

Where the negligence of a railway switchman concurs with that of the foreman of the switch gang in causing the death of another switchman, the railway company will be liable therefor, notwithstanding the death would not have resulted had not the switchman been guilty of concurring negligence.

**14. Contributory Negligence—Burden of Proof.**

In actions for personal injury the law places the burden of proof upon the defendant to establish the contributory negligence of the injured party.

**15. Concurring Negligence—Charge Approved.**

See the opinion for a charge held to properly apply the law to the facts of the case where there was negligence of a fellow servant concurring with that of a vice-principal (foreman), and to require that the negligence of the foreman should have been the direct and immediate cause of the injury.

**16. Charge Not on Weight of Evidence.**

A charge is not on the weight of evidence where, in an action for personal injury, it simply applies the law to the very facts of the case resulting in the injury.

APPEAL from Waller. Tried below before Hon. WELLS THOMPSON.

*Frank Andrews* and *Searcy & Garrett,* for appellant.

*Baldwin & Meek,* for appellees.

NEILL, ASSOCIATE JUSTICE.—This suit was brought in the District Court of Waller County to recover damages against defendant by reason of the alleged negligent killing of their son John. Defendant pleaded general denial, special pleas of contributory negligence, negligence of fellow servant, and assumed risk. The case was tried before a jury and

the trial resulted in a verdict in favor of plaintiffs for $3600, of which $1200 was apportioned to deceased's father, and the remaining $2400 to his mother.

This is the second appeal in this case, a former appeal having been decided by the Court of Civil Appeals at Galveston, whose opinion is reported in 46 Southwestern Reporter, 382.

*Conclusions of Fact.*—On the 10th of April, 1896, John White was one of appellant's switching crew, employed in its yard in Houston, of which crew J. B. SeBelle was foreman and appellant's vice-principal. At that time the crew, under direction and control of SeBelle, was endeavoring to replace a derailed car upon the track, which lay parallel with a long platform, and so close to it that a man could not, without being injured, stand between this platform and a car on the track. The derailed car was the rear one of a train of 15 or 20, and while White was under it on the side next the platform for the purpose of placing a piece of iron in position, so that the car might be pulled on the track by the engine at the other end of the train a signal was negligently given by SeBelle to the engineer to "pull up." In obedience to the signal the train was moved, and the derailed car pulled across the track towards the platform, and White, without any negligence on his part, was caught and pinioned between it and the car, and thereby seriously injured. It was the duty of the engineer to act only on the signals communicated by or through SeBelle. On this occasion the latter, not being in a position where he could direct and watch the progress of the crew's work and at the same time directly communicate in person signals to the engineer, gave them to the fireman on the engine who conveyed them to the engineer,—the fireman being simply the medium through which the signals from SeBelle to the engineer were transmitted. Before signaling the engineer to move the train it was the duty of SeBelle to notify the members of the crew in time for them to get from under the car into a place of safety before the train was moved. This duty the foreman negligently failed to discharge to White, and by reason of such negligence, he was, without any negligence on his part contributing to his injury, caught and pinioned between the platform and the derailed car, as before stated. When White was thus fastened between the car and the platform, SeBelle negligently caused the engineer to back the train, and in backing it before White was extricated, he was, as is shown from the evidence, further injured. White died from the said injuries inflicted as above stated by the negligence of appellant, the evidence being sufficient to show that the last injury caused his death. The appellees are the father and mother of the deceased; and in killing John White, the appellant damaged his father in the sum of $1200, and his mother in the sum of $2400.

*Conclusions of Law.*—1. Our conclusions of fact dispose of the assignment of error which complains of the insufficiency of the evidence

to support the verdict, as well as the one which urges that it is excessive, adversely to appellant.

2. The court did not err in instructing the jury, in case they should find for plaintiffs, to find for each of them such damages as the jury might think proportionate to the pecuniary loss resulting to them from the death of their son. We understand that the measure of damages in cases of this character is the pecuniary loss actually sustained by the parents of the deceased. What this pecuniary loss is must be determined by the jury. In estimating it, they should consider what the deceased earned; what proportion of his wages he contributed to the support and maintenance of his parents; what would probably have been his earnings, and what would he have contributed to their support and maintenance in the future, and for what period of time. The respective ages of the parents and the probable time each would have been benefitted by the earnings of the deceased should also be considered in determining the pecuniary loss sustained by them in the death of their son. All these matters the court instructed the jury they might consider in estimating the damages, and we do not think it erred in so doing. Railway v. Lester, 75 Texas, 56; Railway v. Henry, 75 Texas, 220.

3. There is no conflict between the fifteenth paragraph of the charge and special charge number 8 given at the request of appellant's counsel. The matters which the court, in the eighth paragraph of the charge, told the jury was the basis of estimating the damages, were not given as elements of damages, but merely as circumstances to be considered in estimating them. If the jury could have possibly understood the charge as allowing them to consider such matters as elements of damage, they were clearly relieved of such misconception by the special charge referred to. It, like the general charge, makes the pecuniary loss sustained by appellees the measure of damages, and directs the jury to consider nothing as an element of damages "except the pecuniary interest or the money value which plaintiffs had, if any, in the life of the deceased by reason of contributions, if any made by him to them."

4. The court did not err in permitting a witness to testify, over the objection that it was hearsay, that John White, a short time prior to his death, told his mother he wished her to quit keeping boarders and did not want her to work any more; that she was getting too old to work, and that he would support and take care of her the balance of her life. This testimony was evidence of John's desire and intention to maintain and take care of his mother as long as he lived, and, in connection with other evidence, shows that she had a good reason to expect aid of pecuniary value from him. Such testimony is not hearsay, but original evidence expressive of a son's affection for his mother and of his intention to manifest it by contributing pecuniarily to her support and maintenance.

5. The record does not sustain appellant's thirty-first assignment of error. No objection was made to the testimony of Louisa White, and the only part of James White's testimony complained of in the bill

of exceptions was that in reference to his impecunious condition. In suits by parents for damages accruing from the death of an adult son, proof of their pecuniary condition is admissible. Railway v. Kindred, 57 Texas, 498; Railway v. Bonnet, 38 S. W. Rep., 815; Railway v. Knight, 52, S. W. Rep., 640. Only such objections as the bill of exceptions shows were presented in the trial court will be considered on appeal. Wheeler v. Railway, 91 Texas, 359.

6. The court did not err in permitting J. N. Harris to testify, over the objections of appellant, "that he was acquainted with the duties of foreman and switchman in the yards of its road in Houston, and familiar with their duties in regard to giving signals, and the work and responsibility of each, and with the rules and customs prevailing in regard thereto, and particularly in regard to placing derailed cars on the track; and that it was the duty of the foreman, in all cases of replacing derailed cars, to first see and know that everything is ready and everybody out of the way before any signal should be given to pull on the car; that he could not delegate the right to give a signal to any switchman, nor rely upon the statement made by the switchman to him that all was ready to make the pull. But that it was necessary for him personally to see and know that all was ready and everybody out of the way." The witness not only showed that he was competent as an expert to testify to such facts, but he testified to them from his own personal knowledge of their existence. As to whether he possessed such knowledge, was a question for the jury.

7. We do not think that appellant can be heard to complain of the introduction of evidence of the petition for divorce wherein John White was plaintiff and his wife, Bettie, defendant, filed in the District Court of Harris County on March 11, 1895. When it was offered in evidence appellee's counsel stated that it was offered as a circumstance to show that John's wife had no interest in the recovery. After it was offered, counsel for both parties notified the court that it was mutually agreed that the widow of the deceased had no interest in the suit, and was not a necessary party. One of the attorneys for appellees then notified one of appellant's counsel who was conducting the trial, that he did not care for the petition to remain in evidence, and that unless he (appellant's counsel) desired it to remain, he would ask the court to withdraw it and instruct the jury not to consider it. Whereupon appellant's attorney remarked, "O, let it remain." Upon the attorney stating that he had no recollection of such statement appellees' counsel informed the court what he had stated to appellant's attorney, and asked the court, unless appellant's attorney wanted it to remain in the record, to withdraw the petition for divorce from the consideration of the jury and instruct them not to consider it for any purpose. The trial judge, in his explanation, from which the above is taken, of the bill of exceptions, states that he would have "withdrawn said petition if defendant's counsel had desired, and that it was understood by the court that there was to be no question raised upon this

point." It is by reason of the facts stated that we think the appellant should not be heard to complain here of the introduction of said petition in evidence.

8. The court did not err in refusing to permit appellant to prove by depositions taken of certain witnesses in the case that a certain one of the appellees' witnesses (whose name it is not necessary to mention here) "was a bum, a common street loafer, and had done nothing to earn an honest living in the city of Houston for the past ten years, and was generally known as a bum and street loafer who generally associated with disreputable characters." On the trial of this case from which the first appeal was taken, the testimony was admitted over objections of plaintiffs, and the Court of Civil Appeals of the First District, at Galveston, held its admission was error. Its opinion is referred to as settling the question. White v. Railway, 46 S. W. Rep., 382.

9. After proving by a number of witnesses that they were acquainted with the reputation of a certain witness of plaintiffs for truth and veracity in the community in which he lived, and that such reputation was bad, the defendant offered to prove by the depositions of said witnesses that, from "their knowledge of the witness, and from his reputation for truth and veracity in the community in which he lived, neither of them would believe him under oath, and that he was unworthy of belief under oath and unworthy of trust." The defendant also offered to show by the depositions of said witnesses "the names and number of people they had heard say they would not believe said witness under oath, or who had said that said witness was unworthy of belief, and the facts and circumstances upon which each of said witnesses based his opinion that said witness of plaintiffs was unworthy of belief." The court excluded such testimony, and in doing so we think did not err. In impeaching the credit of a witness the examination should be confined to his general reputation, and the mode of examining into the general reputation is to inquire whether he knows the general reputation of the person in question among his neighbors, and what that reputation is. In some cases it has been permitted to ask a witness, who has testified that he is acquainted with the general reputation of the person in question in the neighborhood in which he lives for truth and veracity and that such reputation is bad, if, from such general reputation, the person is worthy of belief under oath; or, if from such general reputation the witness would believe him under oath. But we know of no case where it has been permitted a witness to testify that from his *personal knowledge* of the person and from his reputation for truth in the community in which he lives the witness would not believe him under oath, and that he was unworthy of belief and trust; or to state the number and names of the people the witness had heard say they would not believe the person under oath. To admit such testimony would be a radical departure from the well established rule of impeaching the credit of a witness by his general reputation.

10.   The nature of the remarks made by the attorney of appellant in reply to the argument made by counsel for appellees upon character of appellant's impeaching witnesses, was improper, and the court did not err in causing counsel to desist from remarks of that nature.

11.   Special charge number 5 asked by appellant was correctly refused, because it was substantially given in charges numbers 11 and 12, asked by the same party.

12.   The court did not err in refusing to give special charge number 19, requested by appellant.   The charge refused is as follows: "If you believe from the evidence that it is the duty of the foreman of a switching crew on the defendant's road to exercise ordinary care before giving a signal to move when an attempt is being made to place a derailed car back upon the track, to know that all is ready for such expected movement before he gives a signal therefor, and you should further believe that a foreman in charge of such crew should make inquiry of those engaged in the preparations before such signals were given, and should receive from them, or one of them, a reply or statement to the effect that all was ready, and you believe that in this case the foreman made such inquiry, and received such reply, and after receiving such reply gave such signal, and you further believe that the making of such signal on his part was the exercise of ordinary care under all circumstances, and that he was not guilty of giving the signal to move said car after having received said answer, and if he did receive it, then the plaintiffs would not be entitled to recover, and your verdict must be for the defendant."   There was testimony from which the jury might have found that White would not have died from the injuries he received from the movement of the car which pinioned him between it and the platform.   The evidence shows that his position between the car and the platform was one of danger known to SeBelle, the foreman, and that, while his danger was apparent to said foreman, he negligently caused the train to be backed, and is sufficient to warrant the jury in finding that such negligence on the part of the foreman was the proximate cause of White's death.   In its main charge the court instructed the jury that if they should find from the evidence that White would not have died from the injuries he received from the movement of the train which fastened him between the car and the platform; that his position there was one of danger known to SeBelle, and that while White's danger was apparent, SeBelle negligently caused the train to be backed, and that if such negligence was the direct or immediate cause of White's death, to find for plaintiffs.   The special charge refused is misleading in that it entirely ignores the issue as to whether White's death was caused by the negligence of the foreman in causing the train to be backed while the deceased's position of danger was apparent to him, and would absolutely compel the jury to find for the defendant if they should find as facts the matters embodied in the charge, though they may have believed from the evidence that White's death was proxi-

mately caused by the negligence of the foreman in causing the train to be backed after knowing deceased's position of peril.

13.   Special charge 10 asked by appellant was properly refused. This charge, if given, would have required the jury to find for the defendant, although SeBelle, the foreman, may have been negligent in signaling the engineer to "pull up," if the concurring negligence of a switchman of the crew contributed to White's death.   If the negligence of the switchman concurred with the negligence of SeBelle in causing White's death, the appellant would be liable therefor, notwithstanding his death would not have resulted had not the switchman been guilty of concurring negligence.   Markham v. Navigation Co., 73 Texas, 250; Railway v. McWhirter, 77 Texas, 360; Railway v. Croskell, 6 Texas Civ. App., 162.

14.   There is no error in the second paragraph of the court's charge. The law in this State imposes the burden of proof upon defendant to establish the contributory negligence of the injured party.   Railway v. Shieder, 88 Texas, 152.

The fifth paragraph of the court's main charge is abstractly correct as a proposition of law.   However, it is apparent from the evidence that it is not applicable in this case.   The evidence does not tend to make a case of ordinary risk.   It is purely one of negligence.   But the appellant could not in anywise have been prejudiced by the charge.   It might have, in submitting a defensive principle of law inapplicable to the facts, prejudiced the plaintiffs, but the defendant certainly could not have been injured by it.   The error therefore is no ground for reversal.   Railway v. Magee, 92 Texas, 616; Marsalis v. Patton, 83 Texas, 521.

15.   The eighth and ninth paragraphs of the court's charge are as follows: "8.   The defendant would not be liable for the death of John White unless you find from the evidence that John White was not guilty of contributory negligence, and that J. B. SeBelle was a vice-principal of defendant at the time John White received his injuries which resulted in his death, and that the death was caused by the negligence of the said SeBelle, or by the joint negligence of SeBelle and some other servant or servants of the defendant, who were then working with him, which negligence proximately caused or contributed to the death; therefore, if you find that John White's death was caused by the negligence of any other employe than that of J. B. SeBelle, and that SeBelle was in no manner guilty of negligence which contributed to his death, then you will return a verdict for the defendant.   9.   But if you believe that John White was not himself guilty of contributory negligence, as heretofore explained, and that J. B. SeBelle was a vice-principal of the defendant, and that John White's death was caused by SeBelle's negligence, or by his negligence with the negligence of any other employe, co-operating with his negligence, then you will return a verdict for the plaintiffs for such pecuniary loss, if any, as they have sustained."

We think these charges correctly apply the law to the facts of the case. Railway v Bonantz, 48 S. W. Rep., 767; Haveman v. Railway, 20 Texas Civ. App., 610; Markham v. Navigation Co., 73 Texas, 249. Besides, the court in the sixth special charge given at the request of appellant instructed the jury "that if the foreman SeBelle was not guilty of negligence which directly and proximately caused the injury, to find for defendant," and under the main charge, as is shown by paragraphs 11 and 12, the jury could not have found for plaintiffs, unless they believed the negligence of appellant's foreman SeBelle was the direct and immediate cause of White's death.

16.   The twelfth paragraph of the court's charge is as follows: "If you find that J. B. SeBelle was a vice-principal of the defendant, as that has been explained heretofore, and if you further find that John White was not guilty of contributory negligence, and if you further find that at the time of the injury to said White, he was working under the car, or between the car and the platform, and that this position was one of danger, and that the said SeBelle, without any warning or notice to said John White, caused said car to be moved, without first having given the said White warning or notice, and that the said John White did not know that the said car was going to be moved, so as to enable him to remove himself from between the car and the platform, or from his position of danger, before the moving of said car, thereby causing the said John White to believe that his life was in danger, or that he was in danger of serious bodily injury, and that while in such real or apparent danger he attempted to escape and was caught between the car and the platform, and was mashed and injured, from which injuries he died; and if you further find from the facts and circumstances that the said SeBelle was guilty of negligence as explained to you, by causing said car to be moved at the time and in the manner it was moved, and that such negligence was the cause of the injury, and said injuries caused the death of said John White, then you will find for the plaintiffs such actual damage, if any, as will compensate them for the pecuniary loss, if any, resulting to them by the death of the said John White."

· This is complained of as being upon the weight of the evidence. The objection is not tenable. It simply applies the law to the very facts of the case. Railway v. McGlamory, 89 Texas, 639; Railway v. Casseday, 92 Texas, 525; Railway v. Shieder, 88 Texas, 152.

The thirteenth paragraph of the court's charge is complained of upon the ground that there was no evidence authorizing its submission. In our opinion the evidence not only warranted but required the court to give it to the jury.

The judgment of the District Court is affirmed.

*Affirmed.*

Writ of error refused.