J. R. Francis, Administrator, v. Atchison, Topeka & Santa Fe
Railway Company.

No. 3616. Decided June 30, 1923.

(253 S. W., 819.)

1.—Practice—Newly Discovered Evidence—Diligence.

A recovery having been properly reversed on other grounds, rulings
on appeal with regard to diligence of appellant in discovery of new evi-
dence relied on to support a new trial become immaterial, since they would
not again arise. (P. 206).

2.—Same—Death—Damages—Expectation of Assistance—Subsequent Change
of Circumstances.

In action by a parent for damages from causing the death of an adult
son the parents' poverty and need are provable as bearing on the amount
of the probable assistance the son would have rendered him but for such
death. The inquiry is not necessarily limited to his circumstances at the
time the son's death gave him the right of action. Evidence is admissible
of change therein between that time and the date of trial, which would
affect such probable contributions. (Pp. 206-210).

3.—Same—Case Stated.

In an action for damages to parents by the death of an adult son by
defendant's negligence, defendant could show, as reducing the amount of
probable contributions to the parents from that son's earnings, that sub-
sequent to his death, but prior to the time of trial, the parents came into
receipt of a payment of $50.00 per month from the United States Govern-
ment by reason of the death of another son in military service in France.
(Pp. 210, 211).

4.—Same—Death—Damages—Insurance.

Evidence of the receipt of money from insurance policies in their favor
upon the life of a deceased son is not admissible to reduce the amount re-
coverable by such beneficiaries in an action against a third party for neg-
ligently causing his death. But this is distinguishable from the case of
monthly payments becoming receivable by the parents from the Government
for the death of another son in military service, though this comes to them
through the Government's plan of life insurance on soldiers in service for
the benefit of their dependents. This, like money coming to the parents
from any other source, may be shown as bearing on their needs and the
probable contributions to their support by the son negligently killed. (Pp.
210, 211).

Error to the Court of Civil Appeals for the Seventh District, in an
appeal from Potter County.

Francis sued the railway company to recover damages to the parents
of Porter Francis from his death by defendant's negligence. A re-
covery by plaintiff was reversed on defendant's appeal and the cause
remanded for another trial (227 S. W., 342). Appellee thereupon
obtained writ of error from the Supreme Court.

*Barrett & Works* and *Chas. L. Black,* for plaintiff in error (*C. B. Reeder* and *Barrett, Childers & Deathridge* in Appellate Court).

The testimony as to this insurance could not have helped the jury in estimating the damages on another trial because the evidence could not be considered by the jury in an estimation of the damages. H. & T. C. Ry. Co. v. Lemair, 119 S. W., 1162.

The parents of Porter Francis were entitled to recover such actual pecuniary benefits as they might reasonably expect to receive in the future from him. Winnt v. International & Great Northern Railway Co., 74 Texas, 32. The "reasonable expectations" of the parents must be tested according to the facts existing at the time the cause of action arose. The "cause of action" includes not only the wrong complained of, but the damages caused by this wrong. The liability of the defendant for these damages accrued at the time of the death of Porter Francis. That liability then became settled. It included the amount of the damages with respect to the facts then existing and unaffected by any subsequent developments. It is impossible in law that facts not existing at the time of the death of Porter Francis should constitute a part of the cause of action.

The authorities exclude the consideration of insurance. Lipscomb v. Railway Company, 95 Texas, 5. Likewise, it has been held that, in assessing damages for the death of a municipal employee, the jury cannot consider, in mitigation of damages, the pension that his widow is receiving from the municipality. Demarest v. Little, 47 N. J. L., 28. And the fact that the beneficiaries are entitled, upon certain conditions, to a pension from the Federal government cannot be shown. Railway Company v. Maddry, (Ark.) 21 S. W., 472.

Mr. Tiffany, in his work on "Death by Wrongful Act," First Edition, Section 176, page 229, says: "Since the right of action vests upon the death of the deceased, it is not permissible to show that pecuniary benefits have, from another source, subsequently accrued to the beneficiary which are equivalent to those of which he has been deprived."

Mr. Sutherland, in his work on Damages, Third Edition, Volume 1, Section 158, says: "Generally there can be no abatement of damages on the principle of partial compensation received for the injury where it comes from a collateral source wholly independent of the defendant and is, as to him, *res inter alios acta.*" The author cites and discusses many cases illustrating the application of this rule.

It has been many times held that, where a husband sues because of the death of his wife, evidence is not admissible that the husband had subsequently married and that the second wife performed like services to those performed by the deceased. Younger v. Railway Company, 90 Texas, 387; Railway Company v. Garr, 57 Ga., 277; Davis v. Guarnieri, 45 Ohio State, 470.

*Terry, Caven & Mills,* and *Madden, Truelove, Ryburn & Pipkin,* for defendant in error.

Here there is no legal obligation to support, and the measure of damages comprehends such pecuniary benefit as the plaintiff had a reasonable right to expect to receive from the deceased, and any evidence bearing upon this reasonable expectation has been held admissible. For instance, it has been repeatedly held that in such a case the age and physical or pecuniary condition of the surviving parents was admissible to show the likelihood of the contributions. This usually comes up, of course, in an offer of testimony as to the parents being old, feeble, or in very destitute circumstances, coupled with declarations of the deceased that he was not going to marry and would take care of his father and mother as long as they lived, etc. The courts have held this testimony admissible upon the theory that it threw light upon the issue as to the probability of the contributions continuing, or the reasonable expectation of the plaintiff to receive such support from the deceased. (See I. & G. N. Ry. Co. v. Knight, 52 S. W., 640; H. & T. C. Ry. Co. v. White, 56 S. W., 206; I. & G. N. Ry. Co. v. Kindred, 57 Texas, 491; M. P. Ry. Co. v. Henry, 75 Texas, 220; Winnt v. I. & G. N. Ry. Co., 11 S. W., 907; G. H. & S. A. Ry. Co. v. Pigott, 116 S. W., 850; Sills v. F. W. & D. C. Ry. Co., 28 S. W., 908; G. H. & S. A. Ry. Co. v. Bonnet, 38 S. W., 814; Brunswig v. White, 70 Texas, 504, 8 S. W., 85; Railway Co. v. Johnston, 78 Texas, 542, 15 S. W., 104; See also S. A. & A. P. Ry. Co. v. Long, 87 Texas, 148.) It will be observed that in the cases above cited the testimony is declared admissible to authorize the recovery of an increased amount of damages. For the same reason, any testimony throwing light upon the probability of contributions should be admitted, even though it result in a diminution of the damages. In the case at bar the jury were instructed that plaintiff was entitled to recover what the deceased might reasonably have been expected to contribute to the support of his parents. The jury were entitled to all the facts and circumstances which would enable them to answer this issue correctly, and certainly it would have been an aid to them to know what they had not learned on the trial, and that is that the parents of the deceased were to receive $50.00 per month of war risk insurance during the remainder of their natural lives.

In a note in Sutherland on Damages (Vol. 5, sec. 1272, page 4920), it is stated, "In an action to recover for the death of an adult son the former's pecuniary condition may be shown for the purpose of establishing a reasonable expectation of financial aid from the deceased, but not to increase the amount of damages." The author then presumes to add the following statement: "A more accurate statement of the rule is that any fact which tends to show the amount of the pecuniary loss to the beneficiary is competent, whether it tends

to increase or diminish the damages,'' citing a number of cases, among them the following: Bodin v. Duluth St. R. Co., 117 Minn., 513; Reiter-C. Mfg. Co. v. Hamlin, 144 Ala., 192; Nordhaus v. Vandalia R. Co., 242 Ill., 166; Storrs v. Northern Pacific R. Co., 148 App. Div. (N. Y.), 403; Thompson v. Johnston, 86 Wis., 576, 17 Am. Neg. Cases, 911; Cincinnati St. R. Co. v. Altemeier, 60 Ohio St., 10; South Omaha W. W. Co. v. Vocasek, 62 Neb., 710; McCoullough v. Ry. Co., 160 Iowa, 524, 47 L. R. A. (N. S.) 23.

Clearly, any evidence that would assist the jury in determining what the parents might reasonably have expected to receive from the son had he lived, should be admissible in evidence.

MR. JUSTICE PIERSON delivered the opinion of the court.

For the purposes of this opinion, the following will be a sufficient statement of the case:

This suit was instituted by plaintiff in error, J. H. Francis, as administrator of the Estate of Porter Francis, deceased, against defendants in error to recover damages on account of the death of his adult son, Porter Francis. Porter Francis at the time of his death was twenty-nine years of age, unmarried, and according to the testimony of plaintiff in error gave to his parents all of his wages ($2.10 or $2.20 per day), except what he spent for clothes. Plaintiff in error alleged that he and his wife were about fifty-five years of age, had a life expectancy of twenty-one years, and prayed for damages in the sum of $15,000.00.

The case was tried about two years after the death of Porter Francis, and resulted in a judgment in favor of plaintiff in error in the sum of $12,000.00.

In their motion for new trial in the District Court, defendants in error set up as newly discovered evidence that about a year after the death of Porter Francis, Jesse Francis, another son of plaintiff in error, had died while in the army in France, carrying a large amount of life insurance in favor of plaintiff in error, and that now plaintiff in error receives approximately $50 per month from the United States Government, and will continue to receive such amount; that by reason of that fact the pecuniary condition of plaintiff in error was materially changed, and the amount that plaintiff in error could reasonably expect Porter Francis under the facts of the case to have contributed to his support is affected, and that by reason of that fact the amount of the judgment was grossly excessive. This motion was overruled.

The Court of Civil Appeals reversed and remanded the case to the District Court for new trial on several distinct grounds. It held the newly discovered evidence to be material and admissible, and for that and other reasons the judgment for $12,000 to be excessive. It held,

also, that defendants in error had not used diligence in discovering said testimony.

The important question before us, and the only one that we deem it necessary to discuss, is the admissibility of the newly discovered evidence mentioned above. Since we find no error in the action of the Court of Civil Appeals in reversing the case upon other errors assigned, and the case must be remanded, the question of diligence becomes immaterial, as it would not arise upon another trial.

Plaintiff in error insists that the status of the parties at the time of the death of Porter Francis should be accepted and solely looked to in determining the probable amount the deceased, Porter Francis, would have contributed to his father and mother, and upon which the recovery should be based for the death of Porter Francis. He argues that at the death of Porter Francis the status of his earning capacity was fixed; that even though a great change of fortune might have happened to him had he lived, yet, he being dead, nothing further could be shown, and, therefore, it would be unfair to allow testimony to show a change in the financial condition of his father, that has developed since said death and before the trial of the case.

Porter Francis was an adult, and was under no legal duty or obligation to contribute to the support of his father and mother. They had no legal right to his services or wages, as would have been the case during minority, if he had been a minor.

Plaintiff in error then has the right to recover of defendants in error for the wrongful death of his son the present value of such an amount only as he may be able to show the son would probably have contributed to his parents' support had he lived. This, at best, can only be imperfectly shown; but to enable the court and jury to ascertain such amount, plaintiff in error is permitted to show the character of the son, his affection and disposition toward his father and mother, his earning capacity, his probable future earning capacity, etc.; also the ages of himself and wife, their state of health, life expectancy, and financial or pecuniary condition and need of such help and contributions from the son.

The defendants in error, likewise, would be entitled to rebut any of plaintiff in error's proof, and to offer evidence tending to disprove that the parents had any reasonable expectation of receiving aid or contributions from the son, and to offer proof bearing upon the amount of probable contributions.

In this case the trial court properly permitted plaintiff in error to introduce proof of his poor financial condition, his *need*.

In the case of International & G. N. R. R. Co. v. Kindred, 57 Texas, 491, testimony of the financial condition and pecuniary need of the parent was held admissible. This Court, in an opinion by Associate Justice Stayton. said:

"In an ordinary action by a party injured, to recover damages therefor, the testimony would not have been admissible; but in this case, which is one by a mother to recover damages for the injury which she has sustained in the death of her adult son, it was necessary for her to show a damage of a pecuniary nature; yet such damages are not to be given merely in reference to the loss of a legal right, but may be calculated with reference to the reasonable expectation which the mother had, resulting from her condition and the disposition and ability of her son, during his life, to bestow upon her pecuniary benefit as of right or in obedience to the dictates of filial duty without legal claim. Such testimony as was offered was proper to show this reasonable expectation of pecuniary aid by the mother, but not for the purpose of increasing the damages."

The poverty or need of the parent could not create a liability, nor could it be an element of damage, nor because of it could the loss or damage suffered be increased.

The amount of recovery must be based upon the loss sustained. If it were possible to ascertain the actual or exact amount the son, Porter Francis, would have contributed to the support of his father and mother, had he lived, the present worth of that amount of course would be the amount of recovery. That being impossible, in a case of this kind, the deceased being an adult, and the parents having no legal right or demand to the son's earnings, or to contributions from him, the amount of loss sustained is to be ascertained from all the circumstances, relations, and conditions of the parties.

In the first place, liability being established, the parent must show that he had a reasonable expectation of receiving aid and contributions from his son, had he lived. But the facts and circumstances that bear upon the issue as to whether he had such a reasonable expectation, such as the son's ability and disposition to contribute and the father's need or lack of need of such assistance, would unavoidably have an important bearing upon what amount he had a reasonable expectation of receiving from the son, had he lived. The average mind under its judgment and common sense can not help but give weight to such testimony in arriving at a conclusion on both of these issues. The issues are inseparable, and are really one—the reasonable expectation of receiving aid, and its probable amount. As held in the case cited, the poverty of the parent in itself can not form the basis for damages, nor to increase the damages actually sustained, but it is a circumstance, along with the other facts relating to the relations and conditions of the parties, that has a material bearing upon the reasonable expectation of the parent of receiving aid from his son had he lived, and upon the actual amount such son would probably have contributed.

Thus in this character of cases the testimony is admitted, not for the purpose of increasing or diminishing the actual loss or damage,

but as an aid in determining what that loss or damage actually is. This is supported by a quotation in the case of San Antonio & A. P. Ry. Co. v. Long, 87, Texas, 148, 24 L. R. A., 637, 47 Am. St., 87, 27 S. W., 113, a case similar to this one, wherein Judge Stayton quotes with approval the following from the case of Bradburn v. Railway, Law Reports, 10 Exchequer, 1:

"The statute had laid down no rule as to the mode of calculating the damages to be given in respect of the right of action which it created The rule was first laid down by this court, and that rule was, that the damages were to be a compensation to the family of the deceased equivalent to the pecuniary benefits which they might have reasonably expected from the continuance of his life."

In the case of Texas & P. Ry. Co. v. Lester, 75 Texas, 56, 12 S. W., 955, the court said:

"We know of no authority for reducing to a mathematical certainty the amount of damages that a jury may find in such cases as this. At the same time the amount found must be based, as far as can be, on facts proved, and is not within the uncontrolled discretion of the jury.

"The language of the statute is: 'The jury may give such damages as they may think proportioned to the injury resulting from such death.' Giving proper weight to the facts surrounding the parties at the time of the death, the jury may properly have referred to their own experience, observation, and judgment as to what the future contained for them.

"However useful such evidence may be, courts can not hold juries bound by statistics or calculations of life expectancies. In this case the jury had the facts: That the son was industrious, economical, and temperate, and that at the age of twenty-six years he was earning one thousand dollars a year, out of which he was furnishing towards his mother's support, who was then fifty-one years of age, two hundred dollars per annum. If they concluded that her advancing years would create a greater necessity, and that the son's disposition and increasing ability would probably lead him to meet the demand, we are not convinced that an interference by us with the result of that opinion would come any nearer to enforcing the purpose of the law."

In Houston & T. C. R. Co. v. White, 23 Texas Civ. App., 280, 56 S. W., 204, (writ of error denied), the court said:

"The court did not err in instructing the jury, in case they should find for plaintiffs, to find for each of them such damages as the jury might think proportionate to the pecuniary loss resulting to them from the death of their son. We understand that the measure of damages in cases of this character is the pecuniary loss actually sustained by the parents of the deceased. What this pecuniary loss is, must be determined by the jury. In estimating it, they should consider what the deceased earned, what proportion of his wages he

contributed to the support and maintenance of his parents, what would probably have been his earnings, and what would he have contributed to their support and maintenance in the future, and for what period of time. The respective ages of the parents, and the probable time each would have been benefited by the earnings of the deceased, should also be considered, in determining the pecuniary loss sustained by them in the death of their son.  .  .  .

"The matters the court, in the eighth paragraph of the charge, told the jury were the basis of estimating the damages, were not given as elements of damages, but merely as matters to be considered in estimating them. If the jury could have possibly understood the charge as allowing them to consider such circumstances as elements of damage, they were clearly relieved of such misconception by the special charge referred to. It, like the general charge, makes the pecuniary loss sustained by appellees the measure of damages, and directs the jury to consider nothing as an element of damages 'except the pecuniary interest or the money value which plaintiff had, if any, in the life of the deceased by reason of contributions, if any, made by him to them.' "

Thus the pecuniary benefits which plaintiff in error might have a reasonable expectation of receiving, had Porter Francis lived, is the measure of damage, and to that end plaintiff in error was permitted to introduce proof of his pecuniary condition to show that he had a reasonable expectation of receiving aid from his son, and the amount he had a reasonable expectation of so receiving in the light of the circumstances and conditions of the parties, including the pecuniary condition of the father.

The earning capacity of the son, and the financial condition of the father, are alike items of proof tending to show that the father had a reasonable expectation of receiving aid from the son, and the amount the son would probably have contributed.

Plaintiff in error admits the correctness of these principles, and his contention is not that if he had had this income of $50 per month at the time of the death of the son, Porter Francis, it would not have been admissible in rebuttal of his testimony, but that it was not admissible at the time of the trial because it came to him sometime after the death of Porter Francis; that the amount of recovery should be ascertained from the status and condition of deceased and his parents as of the date of the death of the son. Why should not all the facts be considered that may be known or ascertainable at the time the amount of such loss is to be determined? The wages and earning capacity of deceased are not inflexibly fixed as of the date of his death. It was competent not only to prove his wages at that time, but as well his probable chances of promotion at the time of his death and his probable future earnings. Texas & P. Ry. Co. v. Lester,

75 Texas, 56, 12 S. W., 955; St. Louis A. & T. Ry. Co. v. Johnston, 78 Texas, 536, 15 S. W., 134; Houston & T. C. R. Co. v. White, 56 S. W., 204.

It is true, as argued by plaintiff in error, that in most cases the proof of the earning capacity of a decedent, and his probable future earning capacity, would be limited largely, if not wholly, to the facts existing at the time of his death,—not on account of any legal objection to any facts that may be obtained, but on account of the difficulty under such circumstances of obtaining them. But this fact would not make inadmissible other material facts that are obtainable. Besides, is there any inequity or injustice in showing at the time of the trial, as far as possible, by ascertainable facts, the pecuniary condition or the probable need of plaintiff in error during the remainder of his life? If after the death of his son and before the trial he had suffered misfortune, and his need had become greater, that fact would be admissible upon the issue that he had a reasonable expectation of receiving aid and contributions from his son, and what the amount thereof probably would have been.

The fact that the pecuniary condition of plaintiff in error was materially changed between the date of the death of the son and the time of the trial of the case, can not affect its admissibility. The issue is the pecuniary aid the son would have extended to his parents *during the remainder of their lives,* had he lived. It is a reasonable conclusion that the need of plaintiff in error, or his lack of need, would have had an influence upon the reasonable expectation of plaintiff in error of receiving aid, and upon the amount the son would probably have contributed.

The fact that this money received by plaintiff in error is proceeds of an insurance policy, is of no importance in this case. The fact that it is derived from an insurance policy does not alter its effect upon plaintiff in error's financial condition, and the facts relating to it render it immaterial in this case.

Plaintiff in error receives this money from a policy of insurance upon the life of Jesse Francis, another son. Testimony on the financial or pecuniary condition of plaintiff in error is material and admissible only upon the issue of the reasonable expectation of the parents of receiving financial aid from the son, had he lived, and the probable amount thereof. Their financial condition, whatever it is, would have an influence upon the probable amount their son Porter Francis would have contributed to their support.

We are not unmindful of the general rule that proceeds of insurance policies can not be set off against damages caused by the wrongful act of another.

An examination of the authorities shows that the rule is applied to cases where the deceased person for whose wrongful death damages

are sought was a minor son or daughter, father or mother, husband or wife,—one whose services or wages the plaintiff in the action was legally entitled to receive, or one who was under legal obligation to aid and support the plaintiff in the action. In such cases evidence of other means of support was immaterial. We would emphasize the application of the rule to cases where the deceased person had contracted for insurance for which he had paid, and to which the wrongdoer was not privy, and to cases where it is held against public policy for the wrong-doer to profit by his own wrongful act and to be relieved from his own wrong doing.

The duty of the wrong-doer is to answer for the damages wrought by his wrongful act, and that is measured by the whole loss so caused. Under the law the party suffering a loss is entitled to recover for all the loss inflicted, and the wrong-doer can not take advantage of the contracts or other relation that may exist between the injured person and third persons. He will not be permitted to set off against an injury caused by himself the amount of an insurance policy which his wrongful act matured.

If Porter Francis had survived his injuries and had had accident insurance, the Railway Company could not have set off same against the loss he had sustained (Missouri K. & T. R. Co. v. Rains, 40 S. W., 635; Missouri K. & T. R. Co. v. Flood, 35 Texas Civ. App., 197, 79 S. W., 1106); neither could it do so, he having been killed, if this money had come to plaintiff in error as the proceeds of insurance upon the life of Porter Francis. Tyler & S. E. Ry. Co. v. Rasberry, 13 Texas Civ. App., 185, 34 S. W., 794, (writ of error denied); Houston & T. C. R. Co. v. Weaver, 41 S. W., 846, (writ of error denied); Galveston H. & S. A. Ry. Co. v. Cody, 20 Texas Civ. App., 520, 50 S. W., 135; Lipscomb v. Houston & T. C. Ry. Co., 95 Texas, 5, 55 L. R. A., 869, 93 Am. St., 804, 64 S. W., 923; Houston & T. C. R. Co. v. Lemair, 55 Texas Civ. App., 237, 119 S. W., 1162.

This money came to plaintiff in error, not because of any contract of Porter Francis, nor from insurance upon his life, and not on account of the wrongful act of defendant in error.

Porter Francis was an adult, and under no legal obligation to support his father and mother. The loss sustained by them was the amount Porter Francis would have voluntarily contributed to their support, had he lived. For the purpose of throwing light upon that issue, is their pecuniary condition material? The fact that the $50 per month that plaintiff in error receives, and will continue to receive, is the proceeds of an insurance policy upon the life of a third party, is only incidental. Its effect and its admissibility upon this issue are the same as if it came from any other source.

The judgment of the Court of Civil Appeals is affirmed.