## RED ARROW FREIGHT LINES, Inc., v. SMITH et ux.

### No. 3351.

Court of Civil Appeals of Texas. El Paso.

April 2, 1936.

Rehearing Denied April 23, 1936.

496

Abney & Whitelaw, of Brownsville, for appellant.

W. B. Lewis, of Harlingen, for appellees.

WALTHALL, Justice.

At 8:30 o'clock on the morning of December 20, 1934, Luby Smith, a boy 8½ years of age, was run over and killed by a truck owned by appellant and operated by an employee of appellant. The accident occurred while the truck was being driven on a public highway and while passing Stuart Place Schoolhouse grounds in Cameron county.

This suit was brought by appellees, L. G. Smith and wife, father and mother of Luby Smith, to recover damages for medical and funeral expenses, and for what the minor child would probably have contributed to their financial support after he had reached the age of 21 years.

The jury found all special issues submitted in favor of appellees, and assessed the physician's bills at $30, the burial expenses at $287.50, and the compensation appellees had a reasonable expectation of receiving from their son after he was 21 years of age, had he lived, at $1,500. The court entered judgment for the aggregate amount of said items, and appellant appeals.

### Opinion.

Appellant submits that appellee does not plead, nor does the evidence show, prospective pecuniary earnings which the parents might reasonably expect to receive

from the minor son, nor allegations or proof of actual services performed by the minor son, after reaching his majority, and for such reasons the judgment should be reversed and rendered, or reformed and rendered.

Appellees sued to recover compensation for the reasonable value of the services of the minor before he reached his majority, and after he had reached his majority. The court submitted both issues, and the jury found against appellees as to the value of the minor's services before reaching his majority, and in favor of appellees for the minor's services after he was 21 years of age, and assessed such services at $1,500. Briefly stated, appellees' pleadings stated the minor's age, that he was in good health, was diligent in his studies, was a year ahead of the average pupils, was strong and ambitious and greatly desired an education, was exceedingly bright, loyal, and faithful to his parents, loved them, and had it not been for his death he would have completed his education and have been able to render assistance and contributed to his parents before and after he was 21 years of age because of his fidelity and love for them and his moral obligations and gratitude to them. The pleading then stated the amount he would have contributed to his parents over and above expenses until he was 21 years of age, and the amount he would have continued to contribute to his parents during their old age. The evidence, we think, is sufficient to show the facts pleaded. His father was a tenant farmer, and even at the boy's age he did not want to be a farmer, but wanted to study medicine. We think the pleading and the evidence is sufficient to show the pecuniary benefits the parents had a reasonable expectation of receiving from the boy after he was 21 years of age, had he lived.

█ The action is statutory. Article 4677 (Rev.St.) provides: "The jury may give such damages as they think proportionate to the injury resulting from such death." It is not necessary to allege or prove "actual services performed by the minor," as seems to be suggested by appellant. The minor has not arrived at the age when any service could have been performed.

It would not be necessary to show actual service performed, in this character of case, had the son been more than 21 years of age. Francis v. Atchison, T. & S. F. Ry. Co., 113 Tex. 202, 253 S.W. 819, 30 A.L.R. 114; Galveston, H. & S. A. Ry. Co. v. Leifeste et al. (Tex.Com.App.) 22 S.W.(2d) 1061.

Under the uncontroverted evidence in the case it was not error to refuse to submit the issue of unavoidable accident. Chapter 42, p. 72, 2d Called Sess. 41st Texas Leg. § 8, states the speed limit on commercial vehicles, and inhibits their operation on the public highways at a greater rate of speed than is there prescribed. Commercial motor vehicles, where the gross weight in pounds including the vehicle and load exceeds 16,000 pounds, may not operate on the public highway at a greater speed than eighteen miles per hour.

The driver of appellant's motor vehicle testified: His truck and load together had a gross weight of 16,900 pounds; to the best of his knowledge he wasn't running 20 miles an hour; couldn't say as to his rate of speed but knows he was not driving fast at the time he struck the child; was familiar with the place where the accident occurred, known as Stuart Place School, and knew the school was there; there were school zone signs marking the school boundary; saw children there; saw the little boy jump out from behind a tractor directly across the road in front of him.

"Q. What did you do? A. I swerved my truck to the left, because I thought he was going to beat me across (the highway toward the school grounds). I was right on him when he started across, and he stopped and then I turned back to the right, and instead of the boy standing there, he stopped a minute and then run on in front of me.

"Q. You say he stopped a minute? A. Well, he stopped and then just run on across. Just as I seen the boy run out from behind the tractor I applied my brakes, swerving to my left, and when the boy came to a stop I turned to the right and got off the pavement."

Had his brakes applied all that time; his right front fender struck the child; knows the speed allowed by law when driving a truck loaded as his, it is 25 miles an hour on highways and less in some towns; stopped his truck in ten steps.

Other witnesses testified to a much greater speed the truck was going than did the driver, some stating the truck was going some 50 miles an hour.

The evidence shows that the deceased and his little brother on the morning of the accident went to the school mentioned above on a tractor; the boy that was killed got off the tractor, ran around in front and across the highway, and when he got about one-fourth of the way across he saw the truck

coming and hesitated and then started and then turned and started across; at that time witness heard the brakes of the truck screeching; the truck was making about 20 or 25 miles an hour; the driver began to cut down his speed and zigzag across the highway and the boy ran in front of the truck. Witness saw many school children on the school ground and on the highway. Witness in describing the location and places spoke with reference to a map or blueprint, in the record, but the places mentioned are not marked and identified on the map. The driver of the truck spoke of the speed he was making at the very time he saw the boy, and the effort he then made to avoid striking him. Other witnesses testified to the speed the truck was making just previous to the collision and stated the speed of the truck to be much greater than at the time of the collision.

■ If the accident producing the injury could have been prevented by either party by means suggested by common prudence, it is not unavoidable. Dallas Ry. & Term. Co. v. Darden (Tex.Com.App.) 38 S.W.(2d) 777. An accident which happens without fault on the part of either party is classed in law as "unavoidable." Texas & Pacific Ry. Co. v. Edwards (Tex.Com.App.) 36 S. W.(2d) 477; Thurman v. Chandler (Tex. Com.App.) 81 S.W.(2d) 489.

We have concluded from the evidence in the record that the issue of unavoidable accident is not in the case.

We have found no reversible error in the case, and it is affirmed.

### On Motion for Rehearing.

The attorneys for appellant present a very forceful motion for a rehearing. We have concluded to write more fully on the questions presented than we did in the original opinion.

The speed limit on commercial vehicles, such as the one involved here, by the last amendment (Acts 1931, c. 282, § 9, Vernon's Ann.P.C. art. 827a § 8), is fixed at 25 miles per hour, and not at 18 miles, as stated in the opinion.

Appellant assigned error to the entry of judgment against it in the sum of $1,500 as the contribution found appellees probably would have received from their deceased son after reaching his majority, for the reason that there was no evidence to support the jury's finding. Appellant insists that the evidence must show some pecuniary loss as distinguished from sentimental loss.

As we construe the court's charge, only a pecuniary loss was submitted. As supporting its contention we are referred to Francis v. Atchison T. & S. F. Ry. Co., 113 Tex. 202, 253 S.W. 819, 30 A.L.R. 114, and Galveston, H. & S. A. Ry. Co. v. Leifeste (Tex.Com.App.) 22 S.W.(2d) 1061. In the first cited case, Francis, at the time of his death, was 29 years of age, unmarried, and gave to his parents some $2.10 or more per day. It was alleged by the parent, suing as administrator, that he and his wife were about 55 years of age and stated their life expectancy for which they sued. In their motion for a new trial it was alleged that after the death of the son, Porter Francis, involved in the suit, another son had died carrying a large amount of life insurance in favor of plaintiffs, and that by reason of that fact the judgment of $12,000 was excessive. In that case Judge Pierson for the Supreme Court held that the income from the insurance was admissible to be shown in evidence, and otherwise discussed the facts that could be shown by both parties under the facts of that case. The court quoted from other cases where the deceased son was far passed the age of 21 years, and where the evidence showed the amount of money actually contributed to the support of the parents, and held as in other cases from which quotations are made, that the compensation should be equivalent to the pecuniary benefits which the parents might have reasonably expected from the continuance of the life of the deceased son.

■■ In Texas Jurisprudence, vol. 33, p. 258, it is said that it is ordinarily impossible, particularly with respect to a child of tender years, to produce exact proof of the loss sustained by reason of his death. The law does not fix the amount and witnesses cannot be called to estimate it. The measure of damages in such cases is the present value of the pecuniary benefits which the parents had a reasonable expectation of receiving from him after he reached his majority, had he lived.

■ It is true there is a paucity in pleading as to the facts, and in the proof offered on the facts pleaded. Appellant states for the first time in its motion that the record is bare of proof as to the age, health, and life expectancy of the parents. Appellant made no point in its pleading, nor in its motion for a rehearing, nor in its brief as to the want of such proof.

The court's attention was not called to the absence of such facts in the proof, and

appellant does not in its motion suggest reversible error based on the absence from the record of such facts. We feel disposed to hold that reversible error is not shown.

The court did not submit any issue of unavoidable accident, though requested to do so, and appellant complains of such failure. We still have the same view on that issue we expressed in the opinion. It seems to us that the driver of appellant's truck owed the duty to check up the speed of his truck to a much less rate than he said he was going before and at the time of the accident. He then saw ànd had passed the school zone notice, saw children on the school grounds, and the uncontroverted evidence of other witnesses shows that other children were on the highway going toward the school grounds at the time of the accident. Conceding that the driver of appellant's truck did all that he could do to avoid striking the boy after he saw him go upon the highway in front of his truck, yet, by his failure to use that degree of care that an ordinarily prudent person would ordinarily use under the same circumstances, it seems to us he created the danger of injuring some child he now says was unavoidable. While the driver of the truck had the right, under ordinary circumstances, to drive on the highway at the rate of 25 miles per hour, we think, under the undisputed circumstances, there could be no question but that he should have checked up his speed to a much less speed than he said he was going at the time of the accident. We think the accident should not be classed as unavoidable.

The motion is overruled.