**Betty F. RUSSELL, Individually and as Representative of the Estate of Desiree Russell, Deceased, Appellant,**

**v.**

**DUNN EQUIPMENT, INC., et al., Appellees.**

**No. C14–84–851–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 1, 1986.

Rehearing Denied May 29, 1986.

Tom L. Pettiette, Houston, for appellant.

Frank M. Bean, B. Lee Ware, Eileen Norwood, Houston, for appellees.

Before JUNELL, ROBERTSON and CANNON, JJ.

## OPINION

JUNELL, Justice.

Appellant, Betty F. Russell, brought suit against appellees, Dunn Equipment, Inc. and Howard Kent Orlea to recover damages for the personal injuries to and the death of her daughter, Desiree Russell. The fatal accident occurred on August 21, 1981, when an 18–wheel tractor-trailer, owned by Dunn Equipment and driven by its employee, Howard Kent Orlea, ran a red light and collided with Desiree Russell's vehicle. The jury: (1) found Howard Kent Orlea negligent in running the red light, traveling at the speed at which he was traveling, and in keeping a lookout; (2) found Dunn Equipment negligent in allowing operation of the 18–wheeler on the occasion in question and in the maintenance, repair, or upkeep of the brakes on the 18–wheeler; (3) found no damages for the estate of Desiree Russell for her physical pain and suffering and mental anguish; (4) found Betty Russell's damages for her pecuniary loss and loss of companionship was $200,000, and her damages for mental anguish was $200,000; and (5) failed to find Dunn Equipment grossly negligent in the maintenance, repair, or upkeep of the brakes or in allowing operation of the 18–wheeler. On August 17, 1984, appellant filed a Motion for Judgment on the jury's verdict. Joseph D. Jamail had previously filed a Petition in Intervention alleging that he had a contract of employment with Betty F. Russell that entitled him to 40 percent interest in the amount of any judgment rendered. On September 19, 1984 the court signed judgment that Betty Russell recover from Howard Kent Orlea and Dunn Equipment $400,000 and that Joseph D. Jamail had a vested 40 percent interest in the recovery that was assigned to a trust known as "The Brazoria County Underprivileged, Mentally Disabled and Handicapped Person's Fund."

We hold that the trial court erred in granting judgment on Joseph D. Jamail's Petition in Intervention for 40 percent of Betty Russell's recovery without having a trial thereon and accordingly reverse and remand for trial on the Intervention.

Appellant makes the following contentions in her first five points of error: (1) that damages for Desiree Russell's conscious pain and suffering prior to her death was established as a matter of law; (2) that the jury's failure to find these damages was against the great weight and preponderance of the evidence and manifestly unjust; (3) that the evidence established as a matter of law that appellant's damages un-

der the Wrongful Death Statute were greater than the amount found by the jury; (4) that the amount the jury found for these damages was against the great weight and preponderance of the evidence and was manifestly unjust; and (5) that the evidence established the gross negligence of Dunn Equipment as a matter of law. Appellant filed a Motion for Judgment on the verdict of the jury. A motion for judgment on the verdict of the jury has long been held to be an affirmation that the jury findings were supported by the evidence. *Whitehead v. Reiger,* 6 S.W.2d 745 (Tex. Comm'n.App.1928, judgment adopted). Where appellant has moved for judgment on the jury verdict and the court has granted his motion and rendered such judgment, appellant cannot complain on appeal that the jury findings, on either liability or damages, have no support in the evidence or that the evidence is factually insufficient to support the jury findings. *Litton Industrial Products, Inc. v. Gammage,* 668 S.W.2d 319, 322 (Tex.1984). Appellant's first five points of error, which attack the evidentiary support of the jury's verdict, are inconsistent with her Motion for Judgment and therefore cannot be considered on appeal.

Appellant argues that the rule in *Litton* should not be applied to her because her Motion for Judgment states that it was made "without waiver of appeal or the right to file a motion for new trial or any other subsequent pleadings—." In *Litton,* the court stated:

> We disapprove, however, Litton's argument that it reserved the right to complain about the judgment, because it accompanied its motion for judgment with a brief in which it took back what it urged in its motion. Litton's trial brief that accompanied its motion reserved the right to "challenge any adverse judgment based upon the verdict." We disapprove a practice by which a party, by motion, induces the trial court on the one hand to render a judgment, but reserves in a brief the right for the movant to attack the judgment if the court grants

the motion. Litton could not have it both ways.

*Litton, supra,* at 322.

We see no distinction between appellant's attempted reservation of the right to complain in the instant case and the attempted reservation in *Litton.* Points one through five are overruled.

Appellant raises other points of error that do not attack the jury's verdict upon which judgment was rendered. These points are not inconsistent with appellant's Motion for Judgment on the verdict and will be considered.

The sixth point of error states the trial court failed to properly align the parties, thereby prejudicing the jury against the plaintiffs.

In her argument and authorities under point six appellant presents complaints completely different from the stated point of error. In her argument under point six appellant contends the trial court erred in allowing the attorney for Orlea and the attorney for Dunn Equipment to separately voir dire the jury panel, make opening statements, examine and cross-examine witnesses and make closing arguments.

Dunn Equipment and its truck driver, Orlea, were represented by different attorneys. Neither Dunn Equipment nor Orlea requested that each be given six peremptory challenges in the jury selection. The two parties were given a total of six challenges. Neither side invoked the provisions of Tex.R.Civ.P. 233 concerning alignment of parties and equalization of the number of peremptory challenges so that no litigant or side is given unfair advantage; appellant makes no claim that they did so. Instead appellant relies on Tex.R. Civ.P. 265(g), which provides:

> The trial of cases before a jury shall proceed in the following order unless the court should for good cause stated in the record, otherwise direct:
>
> \* \* \* \* \* \*
>
> g) But one counsel on each side shall examine and cross-examine the same witness, except on leave granted.

 This rule has no application to appellant's complaints that the trial court erred in allowing the two attorneys to voir dire the jury, make opening statements and make closing arguments. Rule 265(g) could apply only to the matter of the two attorneys examining and cross-examining witnesses. Appellant argues that Orlea and Dunn Equipment constituted only one "side" in the case because there was no conflict of interest between them. However, it was held in *Shelton v. Taylor*, 615 S.W.2d 912 (Tex.Civ.App.—Eastland 1981, no writ) that the trial court did not err in allowing two attorneys for one defendant to cross-examine the same witness because Rule 265(g) permits the trial court to grant leave to do so and because there was no showing of prejudice under Tex.R.Civ.P. 434. We believe that the decision is sound and we follow it here. Also, here there were two defendants represented by different attorneys. There could be a number of valid reasons why two defendants who have no conflict of interests in a lawsuit should have the right and might choose to be represented by different attorneys. If a trial court could prevent a party's attorney from participating in the trial to the extent contended for by appellant in this case, such party's right to be represented by counsel of his choice would be effectively destroyed. All of appellant's contentions under the sixth point of error are without merit. Point six is overruled.

 Appellant contends in point of error seven that Howard Kent Orlea's counsel intentionally injected insurance into the case during voir dire examination of the jury panel. Appellant complains of the following statements by Orlea's counsel:

(1) I'm employed to help him [Orlea] tell his story ...

(2) This is a civil trial as Mr. Akins told you. Here they punish you by taking money away from you. It's different.

(3) The status of the case is that Plaintiff's lawyers on behalf of Mrs. Russell are not seeking punitive damages from my client, Mr. Orlea. In other words, the status of the case is that they are not seeking to punish Mr. Orlea. From that I assume that they were merely trying to recover compensatory damages from Mr. Orlea. So, if I've said anything about punishment that bothers you, I retract it.

(4) I'm employed to help him tell his story.

(5) I want to assist Mr. Orlea to tell you is not some cock-and-bull story that he and I have gotten together and cooked up. [sic]

These statements do not contain any reference to insurance or the lack of it. Nor do we believe the statements even imply anything concerning insurance. Point seven is overruled.

 Appellant contends in point of error eight that the trial court erred in excluding testimony from Dunn Equipment about subsequent repairs to its 18–wheel tractor-trailer. TEX.R.EVID. 407 provides in part:

(a) Subsequent remedial measures. When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent remedial measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent remedial measures when offered for another purpose, such as proving ownership, control or feasibility of precautionary measures, if controverted, or impeachment.

The testimony of subsequent repairs to the 18–wheeler was properly excluded under Rule 407 unless it was offered for some purpose other than to show the negligence or culpable conduct of the defendants. Appellant alleges that this evidence was admissible under Rule 407 because it was offered for the limited purpose of showing that the brakes were in a dangerous condition and that the defect in the brakes could have been remedied. Admission of this testimony to show that the brakes were in a dangerous condition would not have been

proper under Rule 407 because establishing this fact was an essential part of appellant's proof that Dunn Equipment was negligent. Appellant's other evidence showing that the brakes could have been repaired was not impeached or controverted by the defendants and was not admissible to impeach any witness of either defendant. Therefore, the evidence of remedial measures was not admissible under the exception of Rule 407. Point of error eight is overruled.

■ Appellant contends in point of error nine that the trial court erred in allowing defense counsel to question appellant about whether she was entitled to any type of pension or compensation as a result of the death of her husband. Appellant asserts that this inquiry was prohibited by the collateral source rule. The collateral source rule bars evidence that the injured person received from a collateral source payments which may have a tendency to mitigate the consequences of the injury. *Traders & General Insurance Company v. Reed,* 376 S.W.2d 591, 593 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.); *Walker v. Missouri Pacific Railroad Co.,* 425 S.W.2d 462, 464 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). Defendants did not ask about appellant's benefits from the death of her husband for the purpose of showing that appellant received compensation from collateral sources by reason of the death of her daughter. This question was intended to show appellant's financial condition. This evidence is relevant to the amount of appellant's pecuniary damages from the death of her daughter. In *Francis v. Atchison, T. & S.F. Railway Co.,* 113 Tex. 202, 253 S.W. 819, 822 (1923) the Supreme Court recognized that both the earning capacity of the child and the financial condition of the parent are relevant to the issue of whether the parent had a reasonable expectation of receiving aid from the child and the amount the child would probably have contributed. Defendants' inquiry about appellant's financial condition was proper. Point of error nine is overruled.

For an additional reason point nine is without merit. When appellant was asked the question concerning her pension income from the death of her husband, her attorney objected on the ground that the inquiry violated the collateral source rule. The trial court sustained the objection and instructed the jury not to consider the matter inquired about. No motion for mistrial was made. If the inquiry had been improper, the court's action would have cured any error.

Appellant contends in point of error ten that the cumulative errors of the trial court as alleged in points of error six through nine justify reversal of this judgment. Since we have held that the actions complained about in points of error six through nine were not error, point of error ten is overruled as well.

In points of error eleven through twenty-four appellant contends the trial court erred in rendering judgment that Joseph D. Jamail had a 40 percent vested interest in appellant's recovery and awarding him or his assignee 40 percent of such recovery.

The judgment of the trial court stated: That upon hearing held herein on June 25, 1984 the following facts were proved to the court by a preponderance of the evidence and the court herenow finds:

(1) The Court allowed the Intervention of Joseph D. Jamail filed in this case.

(2) That Joseph D. Jamail was employed to represent the Plaintiff, Betty F. Russell, by power of attorney dated August 25, 1981. This action was instituted on September 18, 1981, by attorney Marty R. Akins, an employee of the firm of Jamail, Kolius & Mitthoff.

(3) That on or about April 30, 1984, Marty R. Akins and Betty Russell attempted to withdraw the firm of Jamail & Kolius from this cause as counsel for Plaintiff. The purported withdrawal and release signed by Mrs. Russell were executed without the knowledge or consent of Joseph D. Jamail. At no time during this employment with Joseph D. Jamail or Jamail, Kolius & Mithoff or Jamail & Kolius, did Marty R. Akins have authority, either actual, implied or apparent to

release or relieve Betty Russell from her power of attorney with Joseph D. Jamail.

(4) That on June 25, 1984, this Court found as a matter of fact and law that the power of attorney between Betty F. Russell and Joseph D. Jamail was valid, effective and binding and that Joseph D. Jamail retained a forty percent (40%) vested interest in this cause of action to be satisfied from any Judgment entered in the Plaintiff's favor.

All of these findings and/or conclusions are challenged by appellant on "no evidence" and "insufficient evidence" grounds (Points 13–24). Also, appellant contends Jamail waived his intervention by failing to appear at trial (Point 11) and by failing to put on any evidence or request any jury issues pertaining to the rights claimed by him in his intervention (Point 12).

On September 1, 1981 this suit was originally filed on behalf of appellant by Jamail, Kolius and Mitthoff by Marty R. Akins. Appellant had signed a power of attorney employing Joseph D. Jamail to represent her as her attorney in this suit. In the power of attorney appellant assigned to Jamail a forty percent interest in her cause of action. On May 7, 1984 appellant signed another power of attorney employing Tom L. Pettiette to represent her as her attorney in this case and assigned Pettiette a forty percent interest in her cause of action.

On May 18, 1984 an Agreed Motion for Preferential Trial Setting was filed among the papers in this case. That motion was signed for appellant by Akins and Pettiette by Marty R. Akins and by attorneys for the two defendants in the case. Up until the time of the filing of this Agreed Motion for Preferential Trial Setting the papers on file in this case showed without dispute that appellant was represented by the firm of Jamail and Kolius or its predecessor, Jamail, Kolius & Mitthoff. Both firms were firm names under which Joseph D. Jamail practiced law. Attached to the Agreed Motion for Preferential Trial Setting was an affidavit in which Marty R. Akins swore

that "he is the attorney for * * * plaintiff * * *."

On June 4, 1984 Joseph D. Jamail, d/b/a Jamail & Kolius filed a Motion to Show Authority directed to Marty R. Akins. That motion contained the following allegations:

1. Jamail was employed under the power of attorney of August 24, 1981 and Akins, as an employee, handled the case until he left the employment of Jamail on May 15, 1984;

2. After Akins left Jamail's employment, copies of documents labeled "release" and "motion for withdrawal" were found in the Jamail and Kolius file pertaining to this case, but the originals were never filed with the court;

3. Akins had no authority to release, withdraw, modify or cancel the power of attorney and Akin's attempted appearance on May 18, 1984 is in direct interference with Jamail's power of attorney; and

4. Tex.R.Civ.P. 10 provides that an attorney who appears in a case shall be considered to have continued as such attorney to the end of the suit in the trial court unless there is something appearing to the contrary in the record; and there being nothing to the contrary in the record, Akin's appearance is unauthorized. This motion concluded with a prayer that the court decree that Jamail is the attorney of record for Betty Russell and that any appearance by Marty R. Akins in this case is unauthorized, invalid and improper.

On June 6, 1986 appellant by and through Akins and Pettiette by Tom L. Pettiette filed a Motion to Show Authority directed to Joseph D. Jamail. That motion contained the following allegations:

1. Betty Russell executed a power of attorney with Joseph D. Jamail on August 24, 1981, that power of attorney having been accepted by Marty Akins for Jamail;

2. On April 30, 1984 Betty Russell went to Jamail's office and spoke with Marty R. Akins and obtained from Akins at her

request a "release" and executed a "motion for withdrawal;"

3. On May 7, 1984 Betty Russell executed a power of attorney employing Tom L. Pettiette as her attorney;

4. Before Jamail filed his motion to show authority on June 4, 1984, Betty Russell had requested Jamail to terminate any activity as her attorney in this case. That motion concluded with a request that the court order Jamail to cease and desist from any activity on her behalf in this case.

On June 25, 1984, a court hearing was held on the two Motions to Show Authority. The court's docket sheet contains the following handwritten entry: "6–25–84 Hearing to show authority; Mr. Tom Pettiette to represent plaintiff." This docket sheet entry was signed by Paul Ferguson, Judge.

On June 27, 1984, Jamail's petition in intervention was filed. In the petition in intervention Jamail alleged that (1) Betty Russell on August 25, 1981 signed the power of attorney employing Jamail as her attorney and said power of attorney is still valid and subsisting, Jamail having actively engaged in the prosecution of Russell's cause of action through his employee, Marty R. Akins; and (2) the power of attorney also assigned to Jamail a forty percent interest in her cause of action and Betty Russell has attempted to repudiate the contract of employment and assignment of interest. The petition in intervention concluded with a prayer that Jamail be awarded his assigned interest out of any judgment in or settlement of Russell's cause of action.

In her brief appellant has grouped Points 11–24. We will do the same in our consideration of these points.

Appellant contends the only issue presented to the court at the June 25 hearing on the two motions to show authority was whether Betty Russell should be represented in the case to its conclusion by Joseph D. Jamail or Tom L. Pettiette and evidence introduced at that hearing could not constitute the factual basis for awarding Jamail forty percent of the amount of Betty Russell's $400,000 judgment against the defendants.

Jamail counters with contentions that (1) appellant has the burden of providing this court with a record demonstrating the alleged reversible error; (2) that appellant has not brought to this court a statement of facts in connection with the June 25 hearing; and (3) this court must presume there was evidence at the June 25 hearing to support the trial court's judgment in favor of Jamail.

Under the record before us in this case we cannot agree with Jamail's contentions. We should not presume that the trial court heard evidence on June 25 on an issue not raised by any pleadings on file at the time of that hearing. Jamail's motion to show authority filed on June 4, 1984 did have attached to it a copy of Jamail's power of attorney in which he was assigned a forty percent interest in Russell's cause of action, but it is very clear that the motion to show authority raised no issue except the authority of Jamail or Pettiette to represent Betty Russell in the continued prosecution of the case. Not until the petition in intervention was filed on June 27 was the claim of Jamail to a forty percent vested interest in Betty Russell's cause of action presented to the court by pleadings.

However, we cannot agree with appellant's contention that Jamail waived his intervention by not appearing and participating in the trial, putting on evidence concerning his claim and requesting submission of any fact issues to the jury. It appears from the findings and conclusions recited in the judgment and the award to Jamail or his assignee that the trial court, at least as an afterthought, believed he had tried issues raised by Jamail's intervention in the June 25th hearing even though his signed docket sheet entry on that date recites only that Tom Pettiette was to represent appellant.

We are convinced from the record before us that Jamail's intervention has not yet been tried, either at the June 25 hearing or at the jury trial that began on July 16,

1984. The jury trial began nineteen days after the petition in intervention was filed and before appellant had filed any answer to the intervention. There is no indication that anyone involved in the case thought the intervention was being tried along with appellant's suit against the two defendants. Had Jamail thought that, he certainly would have participated in the trial. Had appellant thought that, she would just have certainly filed an answer contesting Jamail's right to recover. Had the trial court thought that, he would certainly have proceeded with the trial in a different manner and rendered a different judgment.

■ For all of the reasons set forth herein, we must reverse the judgment in favor of the intervenor Jamail and/or his assignee; however, in the interest of justice we remand this entire case to the trial court for trial only of Jamail's intervention. Upon remand for this purpose the intervenor will have an opportunity to file any amended petition in intervention he desires, and appellant will have an opportunity to file any pleadings contesting Jamail's intervention. The trial court can then proceed to trial of the intervention, either with or without a jury, under applicable rules of procedure. And in connection with this remand, and following a trial of Jamail's intervention, the trial court is instructed to again render judgment in favor of Betty Russell against Dunn Equipment, Inc. and Howard Kent Orlea, in the amount of $400,000, plus interest thereon at the rate of 10.99 percent per annum from September 19, 1984, as provided in the original judgment dated September 19, 1984; that such new judgment shall deny the Estate of Desiree Russell any recovery against either of the defendants; and that the trial court in such new judgment shall dispose of the claims of Joseph D. Jamail under his power of attorney and assignment of interest in Betty Russell's cause of action in such manner as is appropriate following the trial on remand of Jamail's intervention. The judgment of the trial court is reversed and remanded with instructions that the trial court conduct further proceedings in accordance with this opinion.