**ALLIED STORES OF TEXAS, INC., et al, Appellants,**

**v.**

**GULFGATE JOINT VENTURE, et al, Appellees.**

No. B14–85–941–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 29, 1987.

Rehearing Denied Feb. 26, 1987.

Jimmy Williamson, Houston, Russell H. McMains, Corpus Christi, for appellants.

Charles W. Hurd, III, M. Scott Incerto, Roger D. Townsend, Houston, for appellees.

Before PAUL PRESSLER, SEARS and CANNON, JJ.

## OPINION ON MOTION FOR REHEARING

SEARS, Justice.

The original opinion is withdrawn and replaced by this opinion on motion for re-

hearing. The Motion for Rehearing is Overruled.

This is an appeal from a take-nothing judgment. Appellants sued for property damage which occurred as a result of flooding of the lower level of the Joske's department store in Gulfgate Mall on June 9, 1975. The parties stipulated damages of $1.5 million. The jury found Appellants 55% at fault for negligently choosing a design for the store which required depressed or scooped parking. Appellees were found 45% at fault for negligently maintaining the drainage system. Appellants moved to disregard the jury's finding of contributory negligence and for judgment for the stipulated amount. However, the trial court granted Appellees' motion for a take-nothing judgment on the verdict. We reverse and render judgment for the Appellants for $1.5 million.

Appellants bring five points of error and Appellees raise two cross-points of error. In points of error one through three, Appellants argue that the trial court erred in overruling their motion to disregard the jury's answers to Special Issues seven and eight because there is no evidence to support findings that Appellants were negligent in choosing the depressed parking design for the store and that this negligence was a proximate cause of the flood damage.

The shopping mall in question was built in the 1950's. The Joske's store was constructed with doors and windows on its basement level. To accommodate this "daylight" basement design, a portion of the parking lot was "depressed" so that it sloped downwards to the basement level. Customers could park directly in front of the basement level entrance and walk into the store. This shopping center was only the second in the country to incorporate the daylight basement design. The design has since been used in dozens of shopping centers across the country without encountering flooding problems. Appellees contend Appellants should not have "selected" the scooped parking design due to the flat topography of the site for the center. However, the record reflects that the flat topog-

raphy and heavy rains characteristic of the Houston area were considered in designing the mall to ensure that the drainage system would adequately protect the store from flooding. The drainage system was designed in conjunction with state, city and county engineers and specialty experts. The entire mall was elevated so that water would flow away from the building and into the streets surrounding it. A special culvert was added in the nearby creek to accommodate the runoff.

The sloping area of the Joske's parking lot was limited in size and the entrance to it bermed to prevent water from the other parking areas from flowing into the depressed area. The basement entrance to the store was also bermed to prevent the parking lot water from draining into the entrance area. The entrance area is drained by five surface inlets which connect to 15-inch pipes and one inlet which connects to a 12-inch pipe. These run into 30-inch and 48-inch lines. From there the water drains into a double 10.5 foot by 12.0 foot box culvert and out into the City of Houston sewer lines. In addition, adjacent to the Joske's basement entrance is a truck tunnel which serves as a secondary overflow system. It is situated at a lower elevation than the parking lot or basement so that water will gravity flow into it before reaching the Joske's store. The truck tunnel is twenty-four feet wide, fifteen hundred feet long and fourteen feet tall. Water can reach a level of four feet in the tunnel before overflowing into the basements of the stores. Six pumps are located in the tunnel to handle large volumes of excess water. However, the pumps in the truck tunnel were shut off at the peak rainfall interval due to electrical danger. On the day the flooding occurred an estimated 7.7 inches of rain fell in the shopping mall area within six hours.

An appellate court, in reviewing a no evidence point of error, must disregard all evidence contrary to the jury's finding and if there is any remaining evidence which would support the verdict or judgment, the trial court's judgment must be upheld. If, after removing all contrary evidence, the appellate court finds an absence of any

evidence which would support the verdict or judgment, a contrary conclusion to the verdict or judgment is required as a matter of law. *McGalliard v. Kuhlmann,* 722 S.W.2d 694 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *see also, King v. Bauer,* 688 S.W.2d 845, 846 (Tex.1985). Although several causes of the flooding were postulated, none of the experts who testified attributed the flooding to the daylight basement design. Indeed, Mr. Graham, the architect who designed the shopping center, testified that the daylight basement design and accompanying drainage system implemented in the Gulfgate project was *and still is* a solid architectural design. He went on to state that the truck tunnel reservoir, "was considered by all the engineers, including the city and building department and everybody that had to pass judgment on [the design] .... And everybody made the judgment call that that would be enough [the truck tunnel reservoir] to take care of any emergency when the surrounding streets were flooded out."

Appellees contend that Joske's, as the largest and most important tenant of the mall, dictated the design of the mall and was therefore responsible for a negligently designed mall. However, Mr. Graham was asked, "Now, when Joske's made requirements to you, it would be true wouldn't it, Mr. Graham, that your company would still insist that sound engineering principles be followed, wouldn't they?" to which he replied, "Indeed." Then, when asked, "When the Allied store people came to you and told you they wanted changes, you would not permit them or allow them to require the John Graham Company to make changes in the design of the store or the system that was involved that would violate engineering principles, would you?", he answered, "No." Mr. Graham testified that Appellants looked to his company for engineering and architectural expertise and did not attempt to actually design the mall themselves. Mr. Frank Wilson, vice-president for store planning and construction for Allied Stores Corporation confirmed that Appellants relied on John Graham Co. for the design of the Joske's store and drainage system.

Appellees also assert that a 1984 report prepared by Dr. Phillip Bedient, an expert in hydrology and flood analysis, shows that the daylight basement design was the cause of the flooding. The 1984 report noted that the design was "unusual" and that the depressed parking area provided the potential for flooding. However, this report does not consider the truck tunnel and erroneously states that there is no secondary overflow system as there is in most large parking lots in the Houston area. The report then concludes that the *drainage system* was inadequate. This 1984 report was revised in 1985, when Dr. Bedient had all the information concerning the flood. In the 1985 report he concludes, "Thus the major cause of the flooding in June, 1975 must have been a faulty drainage system in the lot immediately in front of the Joske's store." Dr. Bedient testified that the 1985 report was more accurate than the 1984 report because he incorporated additional information, such as the truck tunnel reservoir and previous storm data, in his analysis. Further, in neither report did Dr. Bedient assert that the daylight basement design was the cause of the flooding. Dr. Bedient testified that the drainage system should have been able to accommodate the amount of rainfall that fell on June 9, 1975 without any water entering the Joske's store.

Mr. Joseph Barrow, an engineer called as an expert witness by Appellees, testified that the drainage system at Gulfgate Mall, *if functioning properly,* should have been able to drain the amount of rain that fell on the day of the flood without any water even flowing into the truck tunnel. His conclusion, however, was that the Pine Gully watershed was inadequate and overflowed into the Gulfgate Mall parking lot. Mr. Barrow reviewed the drainage system and design of the shopping mall and estimated that the system could handle a 100 year storm without flooding any of the stores. He calculated the June 9, 1975 storm as a 25 year storm. When he was asked at trial, "How does the Gulfgate system compare with today's standards?", he replied, "I would say it meets today's

standards, according to our analysis." Mr. Barrow never criticized the daylight basement design and did not consider it a possible cause of the flooding in the Joske's store.

■ We have thoroughly reviewed the record in this cause and have found no evidence to support the jury's findings of negligence and proximate cause against Appellants. All of the expert witnesses agreed that the drainage system in the depressed parking area, *if operating properly,* should have been able to handle the rainfall experienced on the date of the flooding. None of the witnesses called at trial said use of the daylight basement design was negligent or unreasonable. Further, there was at least one prior instance of a heavier rain without any flooding in the Joske's store. In 1973, the Gulfgate Mall area experienced a storm in which 8.37 inches of rain fell in 7 to 8 hours.

The Court finds it significant that Appellees did not take the position at the time of trial that the design was negligent. In fact, Appellees repeatedly stated that they found "nothing wrong with the design." During voir dire of the jury Appellees told the jury that the flood was "not due to any deficiency in design" and that, "[T]he evidence is going to show there was absolutely nothing wrong with the design." During closing argument Appellees argued, "I have no complaint of the design because John Graham was the grandaddy of the modern day mall, I mean, how is anybody going to complain of him? He was it. You know, he's the one that got it all started with designing it. So there was nothing wrong with the design." Appellees argued an overflow of the Pine Gully watershed caused the flooding. However, the jury rejected this theory in their answers to the Special Issues. It was not until *after* the trial that Appellees filed a trial amendment in which they claimed negligent store design.

In short, there is no testimony or evidence of any kind that the store or the scoop parking lot was negligently designed. In the absence of evidence of negligence, it could not be a proximate cause of the damages. Therefore, the trial court erred in refusing to disregard the findings in Special Issues seven and eight. Appellants' points of error one through three are sustained.

Appellees motion for rehearing attacks this court's holding that "none of the experts who testified attributed the flooding to the daylight basement design." They contend the statement is meaningless because the special issue didn't address itself to whether the design was negligent, but instead inquired whether "plaintiffs failed to exercise ordinary care in choosing a design for their store which required depressed or scooped parking?" Appellees contend that Appellants *chose* the design, the *choosing* was negligent, and that such negligence was the proximate cause of the flooding. Appellees at the same time concede that there was no defect or negligence in the *design* of the shopping center, parking lots or drainage system. This court fails to find any logic to this argument. The simple truth is that *choosing* the depressed or scooped parking design for the shopping center could not possibly be a proximate cause of the flooding *unless* it was negligently or defectively designed. In the total absence of any evidence that the *design* was defective or negligent in any engineering or architectural aspect, it is impossible for the *choosing* of such design to be a proximate cause of any loss. There simply is no causal connection between the *choice* and the *loss.*

■ Appellees assert as cross-points of error that the trial court erred in overruling their motion to disregard the jury's answers to Special Issues one and two because there was no evidence that Appellees negligently maintained and cleaned the drainage system or that such a failure was a proximate cause of the flooding. We disagree.

As noted before, all the expert witnesses agreed that the drainage system was adequate and should have handled the amount of rainfall experienced *if it was function-*

■■■■■■■■■■■■■■■■■■■

*ing properly.* The testimony of several witnesses presented evidence that poor maintenance was a cause of the flooding. Dr. Bedient concluded in his 1985 report that the "major cause of flooding ... must have been a faulty drainage system." Mr. Norman Cummings, Jr., the general manager of Gulfgate Mall, and Mr. William Bineske, the maintenance electrician testified that in front of the Joske's store water was backing up out of the sewer inlets and lifting up the grates covering them. Mr. Bineske testified that this happened *before* the water came over the sidewalk curb. Dr. Bedient testified that this backflow observed at the drainage inlets was evidence that the drainage system was overloaded and possibly partially blocked. He pointed out as circumstantial evidence of this that Gulfgate Mall did not flood during a previous storm of greater intensity and duration.

Mr. Jerry Langford, a former employee of Groce Company, testified that this company had a contract with Appellees to clean the storm sewers at Gulfgate Mall every three months. He explained that the method they used, a high pressure water jet, would remove all debris from the smaller lines, but could not remove heavier debris from the large 30 and 48 inch lines. He also testified that no one from his company ever physically went down in these large lines to remove such debris or cleaned the box culvert beyond them. He stated that Groce Company presented invoices each time they cleaned the lines. However, there were no records showing that the lines were cleaned prior to June 9, 1975. Mr. Charles Gerschner, in charge of cleaning and maintenance at Gulfgate Mall, testified that his crew swept the tunnel and parking lots each day but never went into the sewer lines to clean out debris.

Testimony was also presented which indicated that the roof drainage system was blocked causing additional water to spill over into the Joske's entrance area. In addition, the high water level on the roof caused the roof to leak in a number of places and witnesses testified that the water poured down the walls of offices inside the mall. Dr. Bedient and Mr. Barrow also indicated that they felt that the roof drainage system was blocked by debris because of the manner in which water was observed spilling off the roof.

When we consider this evidence in the light most favorable to the jury's finding, we find that there is sufficient and credible evidence that negligent maintenance of the drainage system was a cause of the damage. We further find that Appellees are estopped from asserting insufficiency of the evidence points of error because they filed a Motion for Entry of Judgment on the Verdict. *Russell v. Dunn,* 712 S.W.2d 542, 545 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Appellees' cross-points of error are overruled.

Appellants' fourth and fifth points of error concern the trial court's rendering of a take-nothing judgment against Appellants under the comparative negligence statute. Because we have determined that reversal is required we find it unnecessary to reach these points of error.

Insofar as the parties have stipulated the damages at $1.5 million and have waived pre-judgment interest, the judgment of the trial court is reversed and judgment is rendered in favor of Appellants for the stipulated $1.5 million in damages.