

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-18-00416-CV
_____

IN RE DCP OPERATING COMPANY, LP F/K/A DCP MIDSTREAM, LP, RELATOR

Original Proceeding
Arising From Proceedings Before the 69th District Court
Moore County, Texas
Trial Court No. 13-81; Honorable David Gleason, Presiding

April 29, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

In this original proceeding, Relator, DCP Operating Company, LP, formerly known as DCP Midstream, LP, seeks to set aside the trial court's order granting the motion for new trial of Real Party in Interest, Blake Stringer. We grant DCP's petition for writ of mandamus.

BACKGROUND

DCP maintains an easement on farmland owned by Stringer. In 2011, DCP excavated an area of the farmland to perform work on its pipeline. Stringer claims DCP failed to properly fill the excavated area, resulting in soil damage and settling. The settling purportedly caused Stringer's irrigation sprinkler to frequently become stuck, leading to overwatering in the excavated area and underwatering in other areas of the field.

Stringer sued DCP for breach of the right-of-way agreement and negligence to recover remediation costs for the soil damage, repair costs for the irrigation sprinkler, and the losses to his 2012 crop yield. The Honorable David Gleason[1] presided over the jury trial.

At trial, DCP sought to question Stringer about statements he made to his crop insurer concerning the cause of his low crop yield and about a loss statement created by the insurer. Stringer's counsel addressed the matter during Stringer's direct examination without referencing the insurer or the loss statement. On direct examination, Stringer testified that he had informed a third party that his low crop yield was due to a "hot, dry summer." Stringer did not identify the third party; however, he did testify that the third party generated a "report" indicating "excessive heat" as the cause of the low crop yield.

On cross-examination, DCP questioned Stringer about a "claim" he made concerning his crop losses. Stringer's counsel objected to DCP's use of the term "claim" as interjecting insurance into the case and to the admissibility of the loss statement as violating the collateral source rule. The trial court overruled Stringer's objections to the

---

[1] Judge Gleason, a visiting district judge, was assigned to preside over the trial.

term "claim," but held that the loss statement was inadmissible under the collateral source rule. DCP did not offer the loss statement into evidence.

After a four-day trial, the jury found that DCP's breach of the right-of-way agreement and negligence had caused the soil damage, damages to the sprinkler, and losses to Stringer's 2012 corn crop. The jury also found that Stringer's own negligence had contributed in causing the sprinkler damages and crop losses and apportioned 60% of the responsibility on Stringer. The jury awarded damages under both causes of action for the reduced market value of the land, the sprinkler repair costs, and the losses to the 2012 corn crop.

Following the jury's verdict, Stringer filed a motion for new trial on various grounds. The trial court granted Stringer's motion and ordered a new trial for the following reasons:[2]

> The Court erred in admitting testimony that suggested that Plaintiff was covered by crop insurance, a collateral source, and such error probably caused the jury to consider insurance, and probably caused the jury to apportion responsibility and determine damages that were inconsistent with the great weight of the evidence, rendering an improper verdict;

> The Hudson Insurance Co. report, Defendants' [sic] Exhibit 27, was not a statement made or authorized by Blake Stringer or any agent of Blake Stringer, and was therefore not an admission against interest regarding which Blake Stringer could properly be impeached.

MANDAMUS STANDARD OF REVIEW

DCP filed a petition for writ of mandamus to vacate the trial court's order granting a new trial. Mandamus is an extraordinary remedy granted only when the relator can

---

[2] The trial court's order incorrectly cites the exhibit number of the loss statement. The loss statement was Defendant's Exhibit 37.

3

show that (1) the trial court abused its discretion and (2) no adequate appellate remedy exists. *In re H.E.B. Grocery Co.*, *L.P.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam).

When granting a new trial, a trial court does not abuse its discretion if its reasons are (1) understandable and reasonably specific, (2) legally appropriate (such as a well-defined legal standard or a defect that probably resulted in an improper verdict), and (3) supported by the record. *See In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 213 (Tex. 2009) (orig. proceeding). *See also In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 758-759 (Tex. 2013) (orig. proceeding); *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 688-89 (Tex. 2012) (orig. proceeding). If the trial court abuses its discretion in granting a motion for new trial, there is no adequate remedy by appeal and the petitioner is entitled to mandamus relief. *See Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d at 209-10.

ANALYSIS

DCP contends that the trial court abused its discretion because its reasons for granting a new trial are not supported by the record. The order states that the trial court "erred in admitting testimony that suggested that [Stringer] was covered by crop insurance, a collateral source," which probably caused an improper verdict and that DCP improperly impeached Stringer with the loss statement.

DCP argues that these grounds are not supported by the record because (1) Stringer failed to preserve error regarding the collateral source rule, (2) Stringer waived the purported error, (3) the collateral source rule does not apply in this case, (4) the

collateral source rule was not violated, (5) the admitted testimony did not cause an improper verdict, and (6) DCP did not use the loss statement to impeach Stringer.

Accordingly, we must review the correctness of the trial court's stated reasons for granting a new trial to determine if they are supported by the record. *See Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d at 758-59 ("Having concluded that the reasons articulated in a new trial order are reviewable on the merits by mandamus, we now evaluate the trial court's grant of new trial against the underlying record.").

## A.  The Collateral Source Rule

The collateral source rule is a rule of evidence and damages. *Taylor v. Am. Fabritech, Inc.*, 132 S.W.3d 613, 626 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). It precludes a tortfeasor from introducing evidence or obtaining an offset for funds received by the plaintiff from a collateral source. *Id. See also Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 934 (Tex. 1980) ("The theory behind the collateral source rule is that a wrongdoer should not have the benefit of insurance independently procured by the injured party, and to which the wrongdoer was not privy."). However, evidence of a collateral source may be admissible for purposes other than the mitigation of damages. *See Mundy v. Shippers, Inc.*, 783 S.W.2d 743, 745 (Tex. App.—Houston [14th Dist.] 1990, writ denied); *Russell v. Dunn Equipment, Inc.*, 712 S.W.2d 542, 547 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

## B.  Stringer Preserved the Purported Error

First, DCP claims that Stringer failed to preserve the purported error. *See Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d at 760; *In re State*, No. 14-18-01036-CV, 2018 Tex.

5

App. LEXIS 10714, at *17-19 (Tex. App.—Houston [14th Dist.] Dec. 21, 2018, orig. proceeding) (per curiam) (mem. op.) (granting mandamus relief because purported error in new trial order was not preserved).

To preserve error, a defendant must make a timely and specific objection to the trial court and the trial court must rule on the objection. TEX. R. APP. P. 33.1(a). The objection must be specific enough so that the trial court can understand the precise grounds to make an informed ruling and afford the offering party an opportunity to remedy the defect if possible. *See McKinney v. Nat'l Union Fire Ins. Co.*, 772 S.W.2d 72, 74 (Tex. 1989).

At the start of DCP's cross-examination of Stringer, Stringer's counsel objected to the admissibility of the loss statement, asserting that it interjected insurance and violated the collateral source rule. Stringer's counsel later conceded that DCP could question Stringer about his conversations with the third party and what the third party reported as the cause of the crop loss.[3] However, he objected to DCP using the term "claim" during its questioning as it "strongly infers insurance." The trial court ruled that the loss statement violated the collateral source rule but allowed DCP to use the term "claim" when

---

[3] **Stringer's Counsel**: … Now, I don't – I – you know, we went into his conversation and the choice that the agency employee made in selecting a code number. Obviously, [DCP] can cross-examine about that. But we – we do object to the introduction of the exhibit as a violation of the collateral source rule, number one…

**DCP's Counsel**: Well, your Honor, my response to that is they can't talk about a document and not allow me to go into it…

**Stringer's Counsel**: I believe, on that point, [DCP] would be able to appropriately cross-examine him. There was a document prepared on your behalf that chose item 12, excessive heat.

6

questioning Stringer. The court stated that it would permit the inference of insurance and granted Stringer a running objection.

Accordingly, based on its context, we find that Stringer's objection to the term "claim" was specific enough for the trial court to understand his position that the term violated the collateral source rule. *See* TEX. R. APP. P. 33.1(a)(1)(A) (requiring the objection to be sufficiently specific to make the trial court aware of the complaint, unless the specific grounds were apparent from the context). Stringer's objection was timely and overruled by the trial court. Thus, we conclude Stringer preserved the purported error.[4]

C.      Stringer Did Not Waive His Objection

DCP also argues that Stringer waived any objection to the collateral source rule because he "opened the door" during his direct examination. A party waives an objection to improper evidence offered by the other side when it has previously introduced the same evidence or evidence of a similar character. *McInnes v. Yamaha Motor Corp., U.S.A.*, 673 S.W.2d 185, 188 (Tex. 1984).

On direct examination, Stringer's counsel asked him the following:

**Stringer's Counsel**: Now, in talking about government reporting, all the reporting you have to do as a farmer, there's a reference in opening statement to a report involving your 2012 corn loss, right?
**Stringer**: Yes.

**Question**: Okay. Let's – let's go through how that reporting works.

* * *

---

[4] In the petition for writ of mandamus and the responding brief, the parties discuss DCP's use of the term "claim" during closing arguments. However, the trial court's order does not include improper jury argument as a reason for granting a new trial. Instead, it cites the admission of "*testimony* that suggested that [Stringer] was covered by crop insurance, a collateral source." (Emphasis added). Therefore, we do not consider the issue of improper jury argument in our analysis.

**Question:** When you get your harvest in, get your yield information from Telemark on the cotton and from the co-op on the corn, do you have to report that?

**Answer:** I do.

* * *

**Question:** And when you reported the 85 bushels, did you receive a communication?

**Answer:** I did.

**Question:** And what was the inquiry?  What was being asked of you?

**Answer:** The communication was what was the reason for the low yield.

**Question:** And this is a phone call?

**Answer:** Yes.

**Question:** And you had a conversation with this person, this employee, right?

**Answer:** Yes.

**Question:** And do you have a specific recollection of exactly what you told them?

**Answer:** I just told them it was a hot, dry summer.

**Question:** Okay.  And then did you fill out – did you personally fill out a form?

**Answer**: No.

**Question:** Did you sign it?  As far as you know, sign anything?

**Answer:** No, not that I can recall?

**Question:** Okay. Is – is there, then, a report – or a document generated by the persons you talked to?

**Answer:** Yes.

**Question:** Okay. And on the report that is generated by that business or entity or agency, or whatever it is, did that person or business on the other end make a selection on how to describe it?

8

**Answer:** Yes, they have a set of codes that they enter.

**Question:** You didn't enter the code?

**Answer:** I did not enter the code.

* * *

**Question:** And was the report created for your business, your farm, coded a given cause number?

**Answer:** Yes, it was.

**Question:** What number was that?

**Answer:** I think it was a number 12.

* * *

**Question:** Okay. What does code 12, now that you've got the document, what does the code 12 say?

**Answer:** Excessive heat.

* * *

**Question:** Now, technically, what was the cost [sic] of the yield loss of the corn in 2012?

**Answer:** Lack of water, irrigation water during pollination was the technical reason […] that the corn did not make it.

Thus, Stringer testified about statements he made to a third party concerning his low crop yield and that the third party generated a report indicating excessive heat as the cause. Stringer's testimony did not, however, indicate that he received any funds or payments from a collateral source as compensation for his losses. *See Kosaka v. Hook & Anchor Marine & Watersports, LLC*, No. 03-11-00134-CV, 2012 Tex. App. LEXIS 9487, at *7-8 (Tex. App.—Austin Nov. 8, 2012, no pet.) (mem. op.) (holding that the collateral source rule was not violated where the defendant's questions did not reveal the source

9

of any funds available to compensate the plaintiff for his injuries). Therefore, we find that Stringer did not waive his objection to collateral source evidence.

### D. The Collateral Source Rule Applies

Next, DCP argues that the collateral source rule does not apply in this case because the rule does not apply to breach of contract claims.[5] In support of its argument, DCP cites *Travelers Indem. Co. v. Page & Assocs. Constr. Co.*, No. 07-97-00338-CV, 1998 Tex. App. LEXIS 6423 (Tex. App.—Amarillo Oct. 15, 1998, pet. denied), *reh'g overruled by*, 1998 Tex. App. LEXIS 7531, at *2-3 (Tex. App.—Amarillo Dec. 3, 1998). In *Travelers*, the plaintiff sued his liability insurer for breach of contract and extracontractual tort claims, but the extracontractual claims were severed from the case before trial. *Id.* On rehearing, the plaintiff argued that the collateral source rule precluded the defendant from receiving settlement credits for settlement funds paid to the plaintiff from its other insurers. *Id.* In our opinion denying the plaintiff's motion for rehearing, we held that that the collateral source rule did not apply because the only remaining claims were contractual. *Id.* at *3.

Here, Stringer's negligence and breach of contract claims were tried together. Thus, even if the collateral source rule does not apply to breach of contract claims, the rule applied during the trial of Stringer's unsevered negligence causes of action. Accordingly, we find that the collateral source rule was applicable at trial.

---

[5] Stringer sued DCP for negligence and breach of contract. We assume, arguendo, that DCP is asserting that Stringer cannot recover damages for his negligence claim because the jury apportioned more than 50% of the responsibility on Stringer for the crop losses. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 33.001, 33.003 (West 2015).

E.      DCP Did Not Introduce Collateral Source Evidence

DCP asserts that no evidence was admitted in violation of the collateral source rule because there was no testimony of benefits received by Stringer from a collateral source.   At trial, DCP asked Stringer the following about his "claim" and the loss statement:

**DCP's Counsel:** Let's go now to exhibit – or excuse me, to – back to hot, dry winds.  Now, hot, dry winds can lower a yield even if you're watering properly, agreed?

**Answer:** That's correct.

**Question:** And you agree DCP didn't cause the hot, dry winds?

**Answer:** I agree that DCP did not cause the hot, dry winds.

**Question:**  All right.  But yet you made a claim that your reduction in the yield for corn on Section 198 in 2012 was due to excessive heat; isn't that true?

**Answer:** Yes.

**Question:**  Do you remember yesterday afternoon, when [your counsel] was – had you reading from Defendant's Exhibit Number 37?

**Answer:** Yes, sir.

**Question:** Would you take a look at Defendant's Exhibit Number 37 again.

**Answer:** Yes, sir.

**Question:** I'm going to be referring to that document that y'all read from yesterday.

**Answer:** Yes, sir.

**Question:** Let me ask this question – I'll be very careful.  You filed a claim on Section 198 for a reduced yield for corn crops due to hot, dry winds, true?

**Answer:** True.

**Question:** And that claim for reduction in yield from hot, dry winds is separate from damages caused by DCP repairs – repair on the pipeline, true?

**Answer:** That would be correct, yes.

**Question:** Now, keep looking at number 1 – Defendant's Exhibit Number 37. That's – Section 198 is not the only farm for which you made a claim that you had a reduced yield for corn crops due to hot, dry winds; isn't that true?

**Stringer's Counsel**: Objection, your Honor.

**Trial Court**: Sustained.

**DCP's Counsel:** All right. Did you have reduced yields on other farms in Moore County that summer, due to hot, dry winds?

**Answer:** That would be true.

**Question**: Okay. Let's go through some of those – look at Exhibit Number 37. Let's go through some of those farms where you had reduced yield for corn due to hot, dry winds.

\* \* \*

**Question:** All right. So you had reduced yields due to the hot, dry summer for corn on farms where there had not been a pipeline repair during the preceding months?

**Answer:** That's correct.

Although DCP questioned Stringer about his crop loss claims, DCP did not ask whether he received any compensation for the losses from a third party and DCP did not offer the loss statement into evidence. Thus, there was no testimony or evidence of funds paid to Stringer from a collateral source for his crop losses. *See Kosaka*, 2012 Tex. App. LEXIS 9487, at *7-8; *Walker v. Missouri Pac. R.R. Co.*, 425 S.W.2d 462, 464 (Tex. Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.) (holding that the admission of a letter guaranteeing payment of the plaintiff's medical bills did not violate the collateral source rule because the letter did not evidence a collateral payment).

12

Stringer contends, however, that DCP's use of the term "claim" and phrases "made a claim" or "filed a claim" implied that he received payment from a collateral source. We have found no authority to support this argument. The cases cited by Stringer pertain to the inadmissibility of evidence that a defendant is covered by liability insurance, not the collateral source rule. *See Atchison, Topeka & Sante Fe Ry. Co. v. Acosta*, 435 S.W.2d 539, 549 (Tex. Civ. App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.) ("[I]t is reversible error to disclose to the jury that the defendant has liability insurance."); *William Cameron Co., Inc. v. Downing*, 147 S.W.2d 963, 966 (Tex. Civ. App.—El Paso 1941, no writ) ("[T]he fact that the defendant is protected by indemnity insurance against liability for damages may not directly or indirectly be injected into the case."). *See also* TEX. R. EVID. 411 (evidence of liability insurance inadmissible).

Further, even if DCP's use of the term "claim" and the phrases "made a claim" or "filed a claim" constituted evidence that Stringer received funds from a collateral source, such evidence would be admissible to rebut Stringer's position concerning the cause of his crop losses. *See Watkins v. Charter Oak Fire Ins. Co.*, 592 S.W.2d 50, 51 (Tex. Civ. App.—Texarkana 1979, no writ).

Texas courts have allowed the use of collateral source evidence to rebut a plaintiff's claims at trial as an exception to the rule. For example, in *Watkins*, the plaintiff claimed he suffered a back injury while working for the defendant. *Watkins*, 592 S.W.2d at 50. To show that the plaintiff had suffered the alleged injury prior to his employment, the defendant introduced hospital records showing that the plaintiff was receiving medical benefits from his prior employer for a back injury. *Id.* at 50-51. The appellate court held that the hospital records did not violate the collateral source rule because they did not

13

reveal the amount of any benefits received by the plaintiff. *Id.* Further, the court held that the records were admissible to rebut the plaintiff's claims that he injured his back working for the defendant. *Id.*

Likewise, in *Gothard v. Marr*, the court of appeals held that the plaintiff's proof of loss statements were admissible despite the plaintiff's objection that they violated the collateral source rule. *Gothard v. Marr*, 581 S.W.2d 276, 281 (Tex. Civ. App.—Waco 1979, no writ). There, the plaintiff claimed he injured his hip in a car accident with the defendant. *Id.* at 277. The defendant introduced the proof of loss statements to show that the plaintiff did not report his alleged hip injury to his "sickness and accident" insurer until months after the wreck. *Id.* at 281. The court of appeals held that the proof of loss statements did not violate the collateral source rule because they did not show any sums received by the plaintiff. *Id.* Furthermore, the statements were admissible to rebut plaintiff's claims at trial. *Id.*

In this case, Stringer claimed that DCP caused his low crop yield. To rebut this claim, DCP questioned Stringer about the prior claim he made concerning the cause of his crop losses in the excavated field and the cause of his crop losses in his other fields. DCP did not ask Stringer whether he received any benefits as compensation for his crop losses. Moreover, evidence that Stringer had previously attributed his crop losses to hot and dry weather was admissible to rebut Stringer's position at trial that DCP caused the crop losses. *See Watkins*, 592 S.W.2d at 51.

Accordingly, the trial court did not admit any testimony in violation of the collateral source rule. We, therefore, need not address the trial court's further reasoning that the

14

testimony probably caused the rendition of an improper judgment. Because the record does not support the trial court's ground for granting a new trial, the trial court abused its discretion.

### F.    Stringer Was Not Improperly Impeached

The trial court's second ground for granting a new trial was that the loss statement "was not a statement made or authorized by Blake Stringer or any agent of Blake Stringer, and was therefore not an admission against interest regarding which Blake Stringer could properly be impeached."

A party may impeach a witness by questioning the witness about a prior inconsistent statement.  TEX. R. EVID. 607, 613(a).  The rules of evidence provide even more latitude when the witness is an opposing party.  *See* TEX. R. EVID. 613(a)(5).  Any out-of-court statement made, adopted, or authorized by the opposing party may be offered against them as an exclusion to the hearsay rule.  TEX. R. EVID. 801(e)(2).  Thus, an opposing party's statements need not be an admission or made against interest to be admissible. TEX. R. EVID. 801(e)(2), *Comment to the 2015 Restyling* ("Statements falling under the hearsay exclusion provided by Rule 801(e)(2) are no longer referred to as 'admissions.'  [A] statement can be within the exclusion even if it 'admitted' nothing and was not against the party's interest when made.").

The trial court held, outside the presence of the jury, that the loss statement was inadmissible before DCP cross-examined Stringer.  After the ruling, DCP showed the loss statement to Stringer and then questioned him about the claim he made concerning his crop losses.  DCP's counsel used the phrases "hot, dry winds" and "excessive heat"

15

interchangeably when questioning Stringer. The loss statement also used code number "12" to indicate "excessive heat" as the cause of the loss. To the extent this is a statement contained in the loss statement, Stringer testified that he made the out-of-court statement. *See* TEX. R. EVID. 801(a) (A statement is a "person's oral or written verbal expression."). When DCP asked Stringer whether he "made a claim" that his crop losses were due to "excessive heat," Stringer answered "yes." Therefore, the statement could be offered against Stringer as a prior inconsistent statement pursuant to Rule 613(a).

Because the record does not reflect that DCP improperly impeached Stringer with the loss statement, the trial court abused its discretion by granting a new trial on this basis.

CONCLUSION

Accordingly, we find the trial court abused its discretion in granting Stringer's motion for new trial. Because DCP has no adequate remedy by appeal, we conditionally grant its petition for writ of mandamus and direct the trial court to vacate its order granting a new trial.[6] A writ of mandamus will issue only if the trial court fails to act in accordance with this opinion.

Patrick A. Pirtle
Justice

---

[6] We note that DCP filed a post-verdict motion to disregard certain jury findings. Because the trial court mooted that motion in its *Order Granting New Trial*, no ruling has been made as to that motion. We also order that the order mooting that motion be set aside and that, prior to the entry of judgment, the trial court shall also consider all post-verdict motions.